ACCEPTED
12-15-00041-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/20/2015 8:43:29 PM
CATHY LUSK
CLERK

**IN THE**

**TWELFTH COURT OF APPEALS**

**OF TYLER, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

4/20/2015 8:43:29 PM

CATHY S. LUSK
Clerk

**Case No. 12-15-00040-CR**
**Case No. 12-15-00041-CR**

**MARCUS DONEL POLLEY,**

Appellant,

**VS.**

**THE STATE OF TEXAS,**

Appellee

**BRIEF FOR APPELLANT**

*Georgia B. Kimmey*

**Georgia B. Kimmey**
**Attorney for Appellant**
**TX Bar No. 24049703**
**1 Columbia Ct.**
**Lufkin, TX 75901**
**936 676-3750**

*APPELLANT DOES NOT REQUEST ORAL ARGUMENTS*

ATTORNEY FOR THE STATE AT JURY TRIAL AND APPEAL
PAIGE PATILLO-BROWN, Nacogdoches Asst. County Attorney
TX State Bar No. 24048716
Nacogdoches County Attorney's Office
101 W. Main St., rm. 230
Nacogdoches, Texas  75961
936 560-7789

ATTORNEY FOR DEFENDANT AT JURY TRIAL
LEE WESTMORELAND
TX State Bar No. 24001113
416 Sunset Ave.
Nacogdoches, Texas 75961
936 250-0776

ATTORNEY FOR DEFENDANT ON APPEAL
GEORGIA BROWN KIMMEY
TX State Bar No. 24049703
1 Columbia Ct.
Lufkin, Texas 75901
936 676-3750

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing Appellant Brief for Marcus Donel Polley was delivered via email to Paige Patillo-Brown, Nacogdoches Asst. County Attorney at ppatillo@nacogdoches.county.tx.us on April 20 2015.


_*Georgia B. Kimmey*_____

Georgia B. Kimmey

**TABLE OF CONTENTS**

**Page No.**

Authorities Cited . . . . . . . . . . . . . .                5

Statement of the Case. . . . . . . . . . .                6

Issues Presented . . . . . . . . . . . . . .                8

Statement of Facts . . . . . . . . . . . . .                8

Summary of the Argument . . . . . . .                9

Argument:

I.     **APPELLANT SUFFERED FROM INEFFECTIVE ASSISTANCE OF COUNSEL**

    **a.** Standard of Review – *Strickland* Two Prong Test    12

    **b.** No Objection to Blood Search Warrant    13

        1. Blood Search Warrant Necessary for Blood Draw but Not Produced at Trial

        2. Faxed Blood Search Warrant Does Not Comply with    16 CCP Art. 18.01

    **c.** No Objection to State's Claim Appellant had "Care, Custody    17 and Control" of Marijuana

        1. Appellant's Accident Left Him Confused and Unresponsive

        2. No Explanation Offered by Defense as to Origin of Marijuana    19

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . .                20

Certificate of Word Count . . . . . . . . . .                20

Appendices . . . . . . . . . . . . . . . . . . . . .

    A-1 TEX. CRIM. CODE PROC. Art. 18.01                21

    A-2 TEX. TRANSP. CODE Chap. 724                26

    A-3 TEX. HEALTH & SAFETY CODE § 481.121                31

# INDEX OF AUTHORITIES

**Cases:**                                                                              **Page No.**

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982) . . . . . . . . . . . . . . . . . . . 13

*Cooper v. State*, 928 S.W.2d 482 (Tex. App. – Tyler, 2003, no pet.) . . . . . . . . .13

*Douds v. State*, No. 14012-00642, 14th Court of Appeals, 10/15/2013 . . . . . . . .14

*Fienen v. State*, 390 S.W.3d 328 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . 13

*Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . 12

*Jackson v. State,* 877 S.W.2d 768 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . .20

*McFarland v. State,* 928 S.W.2d 482 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . 12

*Meekins v. State*, 340 S.W.3d 454 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . 13

*Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed. 2d 696 (2013) . . . . . . . . . . . . . 14

*Schmerber v. California*, 384 U.S. 757 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)  10, 13

*State v. Baker*, No. 12-12-00092, 12th Court of Appeals, 10/16/2013 . . . . . . . . . 14

*State v. Mosely* 348 S.W.3d 435 (Tex. App. – Austin, 2011, pet. ref'd) . . . . . . . .14

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984)  12, 20

## STATUTES

TEX. CRIM. CODE PROC. Art. 18.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,17

TEX. TRANSP. CODE Chap. 724 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

TEX. HEALTH & SAFETY CODE § 481.121(a) . . . . . . . . . . . . . . . . . . . . . . . 19

## STATEMENT OF THE CASE

This appeal is brought by Appellant, Marcus Donel Polley, for the decision rendered at his jury trial. October 10, 2013 the Nacogdoches Police Dept. received a 911 call from a friend of Appellant, Mr. Charles Curl, who described Appellant as driving into his front yard while he was mowing the grass, getting out of his car and pointing a gun at Mr. Curl. At the time Mr. Curl called 911, he actually believed Appellant was holding a pistol, later changing his testimony at trial after he realized no weapon was involved. Appellant then backed out, damaging a tree upon exit.

Responding to the 911 distress call, police discovered Appellant sitting in his vehicle, several streets away, again, in a yard, having run over a chain link fence bordering the side of the property. Mr. Polley exited the vehicle after local law enforcement arrived on the scene, but according to State's video exhibit #2, did not appear excited or upset. Instead, he could not explain details of the accident. He confirmed and then denied driving the vehicle, asked the police what happened, refused to take the sobriety field tests, and refused medical treatment offered by EMS personnel who arrived via ambulance within a few minutes.

Officers at the scene decided his behavior warranted an arrest but before impounding his vehicle, conducted a thorough search. Although a pistol was never found, they uncovered a baggie of marijuana on the floor of the back seat.

6

Appellant denied knowing it was there. He was read his Miranda rights in the police car. The Officers drove Mr. Polley to the Nacogdoches police station where they testified they obtained a Blood Search Warrant, and subsequently drove Appellant to the hospital for a blood draw which resulted in a positive finding for PCP when tested at the Texas DPS Crime laboratory in Austin, Texas.

Appellant was charged with DWI and Possession of Marijuana, both Misdemeanor Bs, in Judge Sinz' County Court-at-Law in Nacogdoches, Texas. At his first docket call, Appellant entered a plea of Not Guilty, requested a jury trial, and an attorney. Judge Sinz found him indigent. Lee Westmoreland was appointed as counsel June 11, 2014. The jury found Appellant guilty of both charges November 13, 2014. Punishment Phase II was set for December 15, 2014 before Judge Sinz. Punishment consisted of $297 court costs for each conviction, plus 90 days in jail for each, to run concurrent. The following day, December 16, a bond hearing was held at which both Appellant's Counsel and the State agreed on $7,000. for each conviction. Judge Sinz approved the amount.

After Punishment Phase, Appellant voiced desire to appeal the jury trial verdict. Counsel submitted his Motion to Withdraw December 15, 2014. Notice of appeal was perfected the same day, December 15, 2014. Judge Sinz appointed attorney for appeal on December 22, 2014.

## ISSUES PRESENTED

1.   Did Appellant suffer from ineffective assistance of counsel when his attorney failed to require the State to produce the Blood Search Warrant, or object to the manner by which officers testified it was obtained?

2.   Did Appellant suffer from ineffective assistance of counsel when his attorney failed to argue that Appellant did not know marijuana was in his back seat, or that he purposefully tossed there?

## STATEMENT OF FACTS

Officer Seymor was dispatched to the rental property of Charles Curl and Vanessa Ross that sits on an acre of land.  In their statements, unnoticed by them, Appellant drove into the yard where Mr. Curl was mowing, then surprised him by pointing what looked to be a black pistol, making a motion that simulated shooting him, and hopping back into his Nissan Altima, bumping a tree as he backed out onto the street. (R.R. V.1., Pgs. 32-35) Mr. Curl called 911 in a panic because he thought Appellant was carrying a weapon, and threatening people. (R.R. V.1, Pg. 28, Ls. 22-25)

Meanwhile, Appellant drove to Ritchie St. where he drove into a private residence's yard, plowing over a chain link fence with his vehicle.  When Sgt. Keith Hawkins was dispatched to the accident scene, he discovered Mr. Polley

8

sitting in his car, dumbfounded. (R.R. V.1, Pgs. 46-47, Ls. 24-25, 1-5) Upon questioning as to the cause of the accident, the Officer found Mr. Polley to be disoriented, conflicting in his statements and generally confused. Suspecting Appellant under the influence, he not only called for backup, but an EMS ambulance, which was dispatched to the scene. Appellant refused medical treatment as well as to participate in field sobriety tests, or a breath test. At that point, he was placed into custody. As the officers searched his vehicle prior to impoundment, a baggie of marijuana was discovered in the back seat. Mr. Polley denied any knowledge of the marijuana. (*State's exhibit #2 video*)

## SUMMARY OF THE ARGUMENT

Appellant's lack of effective assistance of counsel left him without a defense and as such, ensured a guilty verdict for both charges. Because he appeared disoriented when local police questioned him about the car accident, refused the officer's request to take the field sobriety tests, refused medical treatment, and refused to take a breath test at the scene, law enforcement assumed Appellant was under the influence of either alcohol or an illegal substance. One officer testified that Appellant's eyes were not focusing correctly and his breath had a chemical smell. Based on that hunch, Appellant was placed in handcuffs and taken to a local hospital where blood was drawn. The Blood Draw Search Warrant is the single piece of evidence that is crucial for the State's argument, because it's a legal

requirement for someone who refuses to submit to a blood draw voluntarily absent exigent, emergency circumstances. *Schmerber v. California*, 384 U.S. 757, 770-771, 86 S. Ct. 1826, 1836, 16 L.Ed. 2d 908 (1966). (R.R. V.1, Pg. 55, Ls. 2-3) No Blood Search Warrant was admitted into evidence by the State at trial, nor was any objection made to the State's failure to produce one. The blood test results were the definitive proof that Appellant had traces of PCP in his system. Had there been no blood test, the State's very foundation would have failed; with a high likelihood of different outcome by the jury. Without the Blood Search Warrant in evidence, probable cause stated in the officer's affidavit is unknown. In the event a Blood Search Warrant was obtained, the method by which both officers testified it was obtained fails to satisfy statutory criteria in the TEX. CODE CRIM. PROC. Art. 18.01 (b)(f) and (g) because they both described "going to the police station, typing it up, and faxing it to the Judge," clearly in violation of the affidavit requirement.

Argument for Appellant with regard to the Possession of Marijuana charge is directed to the highly speculative nature of the State's case in light of Appellant's documented behavior at the scene immediately after the automobile accident. The State's theory asserts that Appellant possessed the marijuana, but threw it in the back of the vehicle in order to hide it from the police. Once more, Appellant's counsel fatally fails to confront or protest their speculation. "Care, Custody and

Control" are argued by the State. What is absent from Appellant's defense is any argument preceding the State's position with regard to "knowingly or intentionally." First the State's witnesses claim that Appellant is not able to think clearly because he is under the influence of PCP; "lethargic and unresponsive" are used to describe Mr. Polley numerous times throughout the trial. In fact, the officers were so concerned over Appellant's disoriented demeanor; EMS was called to the scene. (R.R. V.1, Pg. 46, Ls. 11-17) (R.R. V.1, Pg. 106, Ls. 6-17) Conversely, the State also argues that Appellant was making a calculated move, sneakily tossing the marijuana in the back seat. (R.R. V1, Pg. 200, Ls. 9-12) Cutting through the fog, one can see that these arguments directly contradict each other, and as such, only one can be true. (R.R. V.1, Pg. 73, Ls. 10-16)

Appellant found himself in front of a jury with no defense from his appointed counsel, and as such, was denied the very thing he requested in June, 2014, the assistance of an attorney. At the minimum, if a Blood Search Warrant was obtained, no objection was made by defense counsel over testimony that the document was faxed to Judge Sinz from the police station and he sent it back. TEX. CODE CRIM.. PROC Art. 18.01 clearly states that the officer requesting the warrant must make an affidavit before the Judge who then signs an oath that he has been presented with qualifying probable cause evidence from the presenting officer. Further, the State argues that Mr. Polley was so lethargic that he was

surely under the influence of some illegal substance, yet maintained the presence of mind to try to hide a baggie of marijuana in the back of his vehicle. The contradictory nature of this argument clearly means that only one position can be the truth. It is for these reasons Appellant prays that the 12th Court of Appeals remand these cases back to the lower court for a new trial.

## ARGUMENT

## APPELLANT SUFFERED FROM INEFFECTIVE ASSISTANCE OF COUNSEL

### A.  Standard of Review

Claims of ineffective assistance of counsel are evaluated under the two-step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). The first step requires the appellant to demonstrate that trial's counsel's representation fell below an objective standard of reasonableness under prevailing norms. See *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. See *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. See *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069.

To satisfy the Strickland standard, the appellant is also required to show prejudice from the deficient performance of his attorney. See *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove but for counsel's deficient performance, the result of the proceeding would have been different. See *Strickland*, 466

U.S. at 694, 104 S.Ct. at 2068. (Quoting from *Cooper v. State*, 928 S.W.2d 482, (Tex. App. – Tyler, 2003, no pet.))

## B.   NO OBJECTION TO BLOOD SEARCH WARRANT

### 1.   Blood Search Warrant Necessary for Blood Draw But Not Produced at Trial

Initially, in order to determine whether a valid Blood Search Warrant was even necessary, the totality of the circumstances must be examined because the taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State,* 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). Naturally the first step is to try to get the driver's consent to a blood test. This must be attempted without psychological pressures brought to bear by law enforcement. It must be free and voluntary. *Fienen v. State,* 390 S.W.3d 328, 332 (Tex. Crim. App. 2012) (citing *Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011)). When this is not possible, there are certain circumstances where a blood sample taken without a warrant is not unreasonable search and seizure and therefore, does not violate any constitutional guarantees. *Schmerber v. California*, 384 U.S. 757, 770-771, 86 S.Ct. 1826, 1836, 16 L.Ed. 2d 908 (1966).

The Texas Transportation Code also contains statutory requirements that can apply when a person is arrested for an intoxication related offense while operating a motor vehicle. *See* TEX. TRANSP. CODE Chap. 724.011-013. Those statutes

apply when a person, other than the operator, is killed, or seriously injured and/or taken to the hospital, as result of a motor vehicle accident and has refused to take a breath or blood test. Under those limited conditions, a warrantless blood draw is legal. Although Appellant refused to take the field sobriety tests, breath test, and voluntarily submit to a blood draw, no one else was killed or seriously injured. However, even a warrantless blood draw under Chap. 724 is legal only if the arrest is supported by probable cause. ***State v. Baker***, No. 12-12-00092, 12th Court of Appeals, 10/13/2013 (citing ***State v. Mosely***, 348 S.W.3d 435, 442 (Tex. App. – Austin 2011, pet. ref'd)).

Exigent, emergency situations may also spark the exceptions where the Blood Search Warrant is not required. For the most part, Texas courts have upheld this approach when alcohol is present at the scene, officers unmistakably smelled it on the driver, and the delay involved securing the warrant itself would result in the alcohol level diminishing significantly, rendering the test useless. ***Douds v. State,*** No. 14-12-00642-CR, 14th Court of Appeals, 10/15/2013. However, the U.S. Supreme Court held that a blood draw was so personal, so evasive, that exceptions to a valid Search Warrant should be rare. Even the fact that alcohol rapidly dissipates from the bloodstream does not create a *per se* exigent circumstance. Instead, the court must examine the totality of the circumstances. ***Missouri v. McNeely***, 133 S.Ct. 1552, 1562, L.Ed. 2d 696 (2013).

14

In the situation at bar, probable cause was required in order for officers to secure a Blood Search Warrant. At trial, testimony was offered that despite Appellant's refusal to participate in the field sobriety tests, Sgt. Keith Hawkins believed Appellant's eyes exhibited the resting nystagmus sign of intoxication, although he admitted he was observing Appellant's eyes from a position standing *behind* Corporal Patterson and never administered the actual test for it. (R.R. V.1, Pg. 51, Ls. 15-19). However, the actual probable cause cited in the Blood Search Warrant affidavit was never admitted into evidence. Sgt. Hawkins testified as to what he remembered from the accident scene thirteen months later at trial.

Further, there was no alcohol found in the vehicle, nor was alcohol detected on Appellant's breath from any of the officers. What they did find was marijuana in the back of the vehicle. Appellant was the only person in the car. Testimony from various law enforcement on the scene cooberated the finding that Appellant did not smell like marijuana, and there were no signs that any had been smoked in the vehicle. But what was apparent to Corporal Patterson was a chemical odor that emitted from Appellant's breath. Patterson believed he smelled PCP.

PCP is an illegal substance that can manifest itself through a large spectrum of various behaviors; different with each person, making it extremely difficult to pinpoint definitively without a blood test.

When people are under the influence of PCP, several different things can happen. They can have hallucinations. They can become very violent. They don't feel pain. Their strength is abnormally heightened. They can become violent and hurt people and hurt officers.
Do they always act the same? No they don't. All different. I've seen similar things happen with people on PCP but you can never tell one from another. Sometimes they may be calm. Sometimes they may just be lethargic and sluggish. . . It affects people different ways. I've seen people dancing naked in the street and I've seen some who are just sluggish, slow, kind of confused.

(R.R. V.1, Pg. 85, Ls. 4-23)

Because Appellant's counsel did not challenge the Blood Search Warrant absence it is speculative to determine whether probable cause cited in the request was sufficient. However, because Sgt. Hawkins and Corp. Patterson suspected PCP, which is not able to be confirmed with absolute certainty, a Blood Search Warrant was the proper legal route to take. Counsel for Appellant should have insisted on its presentation for examination at trial.

## 2. Faxed Blood Search Warrant Does Not Comply with CCP Art. 18.01

What is not speculative was the manner in which the Blood Search Warrant was secured from Judge Sinz. Testimony abounds and State's exhibit #2 confirms that law enforcement drove to the police station to type up the warrant, and then

16

subsequently to the hospital for the blood draw. They did not physically present the warrant to the Judge in person. Testimony from Corporal Patterson indicated that it was faxed and returned by the same method. The record is also silent as to any telephone conversation taking place between the officers and the Judge for him to confirm the information stated or identity of the person making the affidavit.

> A blood search warrant is something we type up and send to the Judge to actually get a warrant to take blood even without consent.            (R.R. V.1, Pg. 89, Ls. 1-3)

> From here (explaining video) Mr. Polley is transported to the police dept. where I fill out the search warrant, get that filled out, fax it to the Judge. The Judge faxes it. Back we go to the hospital. We draw the blood and then we go to the jail.            (R.R. V.1, Pg. 110, Ls. 15-19)

There is nothing in the record to support an objection to this procedure despite the fact that it is in violation of the TEX. CODE CRIM. PROC. Art. 18.01 (c)(f) and (g) because there is no "sworn affidavit" before a Judge. Without a valid Blood Search Warrant confirming PCP in Appellant's system, a jury could have come to a very different verdict. Hence, Appellant's counsel failed to provide an effective defense. But for his counsel's deficiencies, Appellant may have been acquitted.

### C. NO OJECTION TO STATE'S CLAIM THAT APPELLANT HAD "CARE, CUSTODY AND CONTROL" OF MARIJUANA

### 1. Appellant's Accident Left Him Confused and Unresponsive

The State's theory of the marijuana discovered in Mr. Polley's vehicle is that he purposefully threw it behind the passenger's seat to hide it from the police after he crashed into the fence. (R.R. V.1, Pg. 105, Ls. 20-25)  The problem with this theory is evident from the video itself, State's exhibit #2.  Mr. Polley wasn't in panic mode when the police approached him sitting in his Nissan Altima.  He was confused and lethargic by testimonies offered by State's witnesses.

State:          In any event, Mr. Polley remained lethargic for hours?
Sgt. Hawkins:   Yes.

(R.R. V.1, Pg. 73, Ls. 10-11)

Corp. Patterson:    . . . And I asked him what happened and he seemed confused and he looked at the car like he was curious about what happened.  Then at one point he changes his answer and said he was not driving.

His demeanor was kind of sluggish, kind of confused. That's how I would describe him.

This is not normal behavior. Most people can answer simple questions.  Most people aren't confused about how they crashed into a fence.

(R.R. V.1, Pgs. 81, 90, 100, Ls. 14-17, 4-5, 9-11)

Despite repeated testimony from each officer that Mr. Polley was confused about the circumstances surrounding his accident, contradicted his recollection of the events, slow and sluggish in responding, the solitary defense presented had nothing to do with countering the State's arguments for possession, or theory of

Appellant's attempt at deception. Counsel for the defense failed to refute the knowledge and intent components of his charge after the State's own witnesses testified repeatedly to Mr. Polley's dubious mental state. TEX. HEALTH & SAFETY CODE § 481.121 (a) Instead, his argument clearly missed the mark. During cross-examination, he asserted that it was Mr. Polley's protected constitutional right not to respond.

## 2. No Explanation Offered by Defense as to Origin of Marijuana

Not only was Appellant unresponsive and sluggish, but there was no indication he had recently smoked marijuana nor were any ashes from burnt marijuana found in Appellant's vehicle. It was the smell of PCP law enforcement testified to on Mr. Polley, not marijuana. (R.R. V.1, Pg. 86, Ls. 18-22) Although the State concocted a theory consisting of Appellant using the marijuana combined with PCP, to create "Wet." (R.R. V.1, Pg. 74, 94  Ls. 20-25, 11-15) No PCP was found in the car or on Appellant's person. Appellant's counsel fell below the reasonable professional standard by not offering any alternate explanation of who the marijuana belonged to, why or when it was left in the vehicle, possible back seat riders who had ridden recently, or other drivers, etc. No questions as to whether the bag of marijuana was tested for fingerprints. Nothing.

## PRAYER FOR RELIEF

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) states that the starting point is to presume counsel was effective. In this trial multiple defenses were left at the table. Arguments of such a material nature that the entire course of the trial may have reversed, ending with an acquittal for Appellant. While it is the Defendant's constitutional right not to testify at his own trial, it is also his constitutional right to be appointed effective assistance of counsel. If counsel fails to provide any assistance, Appellant is clearly harmed. The record confirms that the two prong *Strickland* test has been satisfied. "No defense" falls below a reasonable standard for assistance of counsel. Failing to object to statutory violations in obtaining the Blood Search Warrant from the officer that secured it, is ineffective at the very least. It is for these reasons, that Appellant prays the Court remand his cases back to the trial court for further proceedings.

## CERTIFICATE OF COMPLIANCE – WORD COUNT

### Tex. R. App. P. 9.4(1)(3)

I hereby certify that this original brief by Appellant was created using Microsoft Word, and according to their Word Count feature the brief, including Cover page, List of the Parties, Table of Contents, and Index of Authorities, is 4,456 words.

*Georgia B. Kimmey*

**APPENDIX   A-1**

**TEXAS CODE OF CRIMINAL PROCEDURE Art. 18.01**

Art. 18.01.  SEARCH WARRANT.  (a)  A "search warrant" is a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate or commanding him to search for and photograph a child and to deliver to the magistrate any of the film exposed pursuant to the order.

(b)  No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance.  A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested.  Except as provided by Article 18.011, the affidavit is public information if executed, and the magistrate's clerk shall make a copy of the affidavit available for public inspection in the clerk's office during normal business hours.

(c)  A search warrant may not be issued under Article 18.02(10) unless the sworn affidavit required by Subsection (b) sets forth sufficient facts to establish probable cause:  (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.  Except as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals, including the presiding judge,

a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court may issue warrants under Article 18.02(10).

(d) Only the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code or property, items or contraband enumerated in Subdivisions (1) through (9) or in Subdivision (12) of Article 18.02 of this code may be seized.  A subsequent search warrant may be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place, or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code only if the subsequent search warrant is issued by a judge of a district court, a court of appeals, the court of criminal appeals, or the supreme court.

(e) A search warrant may not be issued under Subdivision (10) of Article 18.02 of this code to search for and seize property or items that are not described in Subdivisions (1) through (9) of that article and that are located in an office of a newspaper, news magazine, television station, or radio station, and in no event may property or items not described in Subdivisions (1) through (9) of that article be legally seized in any search pursuant to a search warrant of an office of a newspaper, news magazine, television station, or radio station.

(f) A search warrant may not be issued pursuant to Article 18.021 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause:

(1) that a specific offense has been committed;

(2) that a specifically described person has been a victim of the offense;

(3) that evidence of the offense or evidence that a particular person committed the offense can be detected by photographic means;  and

(4) that the person to be searched for and photographed is located at the particular place to be searched.

(g) A search warrant may not be issued under Subdivision (12), Article 18.02, of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause that a specific felony offense has been committed and that the specifically described property or items that are to be searched for or seized constitute contraband as defined in Article 59.01 of this code and are located at or on the particular person, place, or thing to be searched.

(h) Except as provided by Subsection (i) of this article, a warrant under Subdivision (12), Article 18.02 of this code may only be issued by:

(1) a judge of a municipal court of record who is an attorney licensed by the state;

(2) a judge of a county court who is an attorney licensed by the state;  or

(3) a judge of a statutory county court, district court, the court of criminal appeals, or the supreme court.

(i)  In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code.  This subsection is not applicable to a subsequent search warrant under Subdivision (10) of Article 18.02 of this code.

(j)  Any magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who:

(1)  is arrested for an offense under Section 49.04, 49.045, 49.05, 49.06, 49.065, 49.07, or 49.08, Penal Code; and

(2)  refuses to submit to a breath or blood alcohol test.

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.  Amended by Acts 1973, 63rd Leg., p. 982, ch. 399, Sec. 2(E), eff. Jan. 1, 1974;

24

Acts 1977, 65th Leg., p. 640, ch. 237, Sec. 1, eff. May 25, 1977.


Sec. (c) amended by Acts 1979, 66th Leg., p. 1124, ch. 536, Sec. 1, eff. June 11, 1979;  Sec. (e) added by Acts 1979, 66th Leg., p. 1076, ch. 505, Sec. 1, eff. Sept. 1, 1979;  Sec. (a) amended by Acts 1981, 67th Leg., p. 759, ch. 289, Sec. 3, eff. Sept. 1, 1981;  Sec. (b) amended by Acts 1981, 67th Leg., p. 2789, ch. 755, Sec. 1, eff. Sept. 1, 1981;  Sec. (f) added by Acts 1981, 67th Leg., p. 759, ch. 289, Sec. 4, eff. Sept. 1, 1981;  Sec. (c) amended by Acts 1987, 70th Leg., ch. 686, Sec. 1, eff. Sept. 1, 1987;  Secs. (g) and (h) added by Acts 1989, 71st Leg., 1st C.S., ch. 12, Sec. 2, eff. Oct. 18, 1989;  Secs. (c), (h) amended by and Sec. (i) added by Acts 1991, 72nd Leg., ch. 73, Sec. 1, eff. May 9, 1991;  Secs. (c), (d), (i) amended by Acts 1995, 74th Leg., ch. 670, Sec. 1, eff. Sept. 1, 1995;  Subsecs. (c), (h) amended by Acts 1997, 75th Leg., ch. 604, Sec. 1, eff. Sept. 1, 1997;  Subsec. (b) amended by Acts 1999, 76th Leg., ch. 167, Sec. 1, eff. Aug. 30, 1999;  Subsec. (d) amended by Acts 1999, 76th Leg., ch. 1469, Sec. 1, eff. June 19, 1999;  Subsec. (i) amended by Acts 2001, 77th Leg., ch. 1395, Sec. 1, eff. June 16, 2001.
Amended by:
      Acts 2007, 80th Leg., R.S., Ch. 355 (S.B. 244), Sec. 1, eff. September 1, 2007.
      Acts 2007, 80th Leg., R.S., Ch. 748 (H.B. 3131), Sec. 1, eff. September 1, 2007.
      Acts 2009, 81st Leg., R.S., Ch. 1348 (S.B. 328), Sec. 5, eff. September 1, 2009.
      Acts 2011, 82nd Leg., R.S., Ch. 66 (S.B. 483), Sec. 3, eff. September 1, 2011.

# APPENDIX   A-2

## TEXAS TRANSPORTATION CODE Chap. 724

TRANSPORTATION CODE

TITLE 7. VEHICLES AND TRAFFIC

SUBTITLE J. MISCELLANEOUS PROVISIONS

CHAPTER 724. IMPLIED CONSENT

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 724.001.  DEFINITIONS.  In this chapter:

(1)  "Alcohol concentration" has the meaning assigned by Section 49.01, Penal Code.

(2)  "Arrest" includes the taking into custody of a child, as defined by Section 51.02, Family Code.

(3)  "Controlled substance" has the meaning assigned by Section 481.002, Health and Safety Code.

(4)  "Criminal charge" includes a charge that may result in a proceeding under Title 3, Family Code.

(5)  "Criminal proceeding" includes a proceeding under Title 3, Family Code.

(6)  "Dangerous drug" has the meaning assigned by Section 483.001, Health and Safety Code.

(7)  "Department" means the Department of Public Safety.

(8)  "Drug" has the meaning assigned by Section 481.002, Health and Safety Code.

(9)  "Intoxicated" has the meaning assigned by Section 49.01, Penal Code.

(10)  "License" has the meaning assigned by Section 521.001.

(11)  "Operate" means to drive or be in actual control of a motor vehicle or watercraft.

(12)  "Public place" has the meaning assigned by Section 1.07, Penal Code.

Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 1013, Sec. 31, eff. Sept. 1, 1997.

Sec. 724.002. APPLICABILITY. The provisions of this chapter that apply to suspension of a license for refusal to submit to the taking of a specimen (Sections 724.013, 724.015, and 724.048 and Subchapters C and D) apply only to a person arrested for an offense involving the operation of a motor vehicle or watercraft powered with an engine having a manufacturer's rating of 50 horsepower or above.

Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995. Amended by Acts 2001, 77th Leg., ch. 444, Sec. 7, eff. Sept. 1, 2001.

Sec. 724.003. RULEMAKING. The department and the State Office of Administrative Hearings shall adopt rules to administer this chapter.

Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995.

SUBCHAPTER B. TAKING AND ANALYSIS OF SPECIMEN

Sec. 724.011. CONSENT TO TAKING OF SPECIMEN. (a) If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

(b) A person arrested for an offense described by Subsection (a) may consent to submit to the taking of any other

type of specimen to determine the person's alcohol concentration.

Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 1013, Sec. 32, eff. Sept. 1, 1997.

Sec. 724.012. TAKING OF SPECIMEN. (a) One or more specimens of a person's breath or blood may be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person:

(1) while intoxicated was operating a motor vehicle in a public place, or a watercraft; or

(2) was in violation of Section 106.041, Alcoholic Beverage Code.

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

(1) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:

(A) any individual has died or will die;

(B) an individual other than the person has suffered serious bodily injury; or

(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment;

(2) the offense for which the officer arrests the person is an offense under Section 49.045, Penal Code; or

(3)  at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

(A)  has been previously convicted of or placed on community supervision for an offense under Section 49.045, 49.07, or 49.08, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections; or

(B)  on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

(c)  The peace officer shall designate the type of specimen to be taken.

(d)  In this section, "bodily injury" and "serious bodily injury" have the meanings assigned by Section 1.07, Penal Code.

Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 1013, Sec. 33, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 422, Sec. 1, eff. Sept. 1, 2003.
Amended by:
     Acts 2009, 81st Leg., R.S., Ch. 1348 (S.B. 328), Sec. 18, eff. September 1, 2009.

**APPENDIX   A-3**

**TEXAS HEALTH & SAFETY CODE §481.121**

HEALTH AND SAFETY CODE

TITLE 6. FOOD, DRUGS, ALCOHOL, AND HAZARDOUS SUBSTANCES

SUBTITLE C. SUBSTANCE ABUSE REGULATION AND CRIMES

CHAPTER 481. TEXAS CONTROLLED SUBSTANCES ACT

SUBCHAPTER A. GENERAL PROVISIONS


Sec. 481.121.  OFFENSE:  POSSESSION OF MARIHUANA.  (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana.

(b)  An offense under Subsection (a) is:

(1)  a Class B misdemeanor if the amount of marihuana possessed is two ounces or less;

(2)  a Class A misdemeanor if the amount of marihuana possessed is four ounces or less but more than two ounces;

(3)  a state jail felony if the amount of marihuana possessed is five pounds or less but more than four ounces;

(4)  a felony of the third degree if the amount of marihuana possessed is 50 pounds or less but more than 5 pounds;

(5)  a felony of the second degree if the amount of marihuana possessed is 2,000 pounds or less but more than 50 pounds; and

(6)  punishable by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000, if the amount of marihuana possessed is more than 2,000 pounds.

Acts 1989, 71st Leg., ch. 678, Sec. 1, eff. Sept. 1, 1989. Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 2.02, eff. Sept. 1, 1994.
Amended by:

Acts 2009, 81st Leg., R.S., Ch. 87 (S.B. 1969), Sec. 25.105, eff. September 1, 2009.