In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00344-CR
_____

CURTIS DUANE OATIS, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR29154**

**MEMORANDUM OPINION**

Appellant Curtis Duane Oatis appeals his conviction for the offense of driving while intoxicated, third or more, and the trial court's imposition of punishment of eight years of imprisonment. Oatis raises three points of error on appeal: (1) the trial court erred in finding that he freely and voluntarily consented to providing a blood sample; (2) the mandatory blood draw statute is facially unconstitutional; and (3) without the results from the blood analysis, the evidence

1

is legally insufficient to support the judgment. We affirm the trial court's judgment.

## Background

Oatis was arrested without a warrant for driving while intoxicated. The arresting officer transported Oatis to a hospital, where Oatis had his blood drawn. The State indicted Oatis for felony driving while intoxicated, third or more, pursuant to sections 49.04 and 49.09 of the Texas Penal Code. Tex. Penal Code Ann. §§ 49.04, 49.09(b)(2) (West Supp. 2014).[1] Oatis filed a motion to suppress the results of his blood analysis, claiming that his blood was drawn without a warrant and without his consent.

At the suppression hearing, the State argued that Oatis gave express consent to the blood draw. The arresting officer testified on behalf of the State. The officer testified that he arrived at the scene of an accident and found a truck stuck in a ditch. Oatis was standing next to the truck. Oatis explained to the officer that as he was leaving Dairy Queen, he tried to avoid colliding with another vehicle and in so doing ended up in the ditch. After some investigation, the officer determined that the truck had run into the corner of the Dairy Queen prior to landing in the ditch.

---

[1] Although the statute has been amended since the commission of the offense in question, the changes are not material to the issues on appeal; accordingly, we cite the current version of the statute for convenience.

2

Oatis admitted to "being behind the wheel[.]" The officer observed that Oatis had slurred speech and had a strong odor of alcohol emanating from his person. According to the officer, Oatis admitted he had consumed alcohol. After conducting field sobriety tests, the officer determined that Oatis was under the influence of something that would cause him not to have his normal mental faculties to safely operate a motor vehicle. The officer received Oatis's criminal history through dispatch and learned that Oatis had more than two DWI convictions. Based on Oatis's demeanor, his performance during the field sobriety tests, and his criminal history, the officer determined that he needed to get Oatis's blood alcohol concentration. The officer testified that he asked Oatis to submit to a blood test and that Oatis consented to have his blood drawn.

The trial court admitted and reviewed a video recording from the officer's dashboard camera (dash cam). The officer testified that he had two conversations with Oatis about consenting to a blood draw. The officer first spoke with Oatis at the scene of the accident, and asked Oatis for his consent to perform the blood draw. Oatis's response to the officer led the officer to believe that Oatis was refusing to give his consent. However, the officer explained that Oatis did not give him "a definite no." The officer understood Oatis's response as suggesting that the officer could ask Oatis to give a blood sample but that Oatis could refuse the

3

request. The officer testified that at that time, he informed Oatis that because he had numerous DWI convictions, the blood draw was mandatory. The video recording from the officer's dash cam is consistent with the officer's testimony.

The officer testified that he had another conversation with Oatis once they arrived at the hospital. The officer testified that he read Oatis the complete statutory warning and gave Oatis the opportunity to refuse the blood draw, but that Oatis consented. According to the officer, Oatis's consent to the blood draw was clear and unambiguous. The video recording from the officer's dash cam is consistent with this testimony. The officer testified that he believed the mandatory blood draw provision applied to Oatis; however, he testified that had Oatis not consented, he would have obtained a warrant.

The trial court denied Oatis's motion to suppress. In its findings of fact and conclusions of law, the trial court determined, among other things, that the officer requested a specimen of blood from Oatis and that Oatis "freely, voluntarily, and knowingly consented to the submission of a specimen of blood." The trial court admitted Oatis's blood specimen and the results of the blood alcohol test of the specimen into evidence at trial. Analysis showed Oatis's blood alcohol concentration to be 0.27 grams of alcohol per 100 milliliters of blood, which is above the legal driving limit. *See* Tex. Penal Code Ann. § 49.01(1), (2) (West

4

2011), § 49.04(a). The jury found Oatis guilty as charged in the indictment. Oatis timely appealed.

## Standard of Review

In our review of a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). If the trial court makes findings of fact, we determine whether evidence supports those findings. *Kelly*, 204 S.W.3d at 818. We do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Next, we review the trial court's legal rulings *de novo* unless the trial court's explicit fact findings that are supported by the record are dispositive. *Kelly*, 204 S.W.3d at 818. We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736,

5

740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

### Consent to the Blood Draw

In his first issue, Oatis contends the trial court erred in finding that he freely and voluntarily consented to providing law enforcement with a sample of his blood. In his motion to suppress, Oatis argued that the results of his blood test should be suppressed under both the Fourth Amendment of the United States Constitution and under article I, section nine of the Texas Constitution.

In requesting the trial court to suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id.*; *see also Kelly*, 204 S.W.3d at 819 n. 22 (stating in the context of a case alleging assault in a blood draw that "[i]t is important to note that appellee had the initial burden to produce evidence to support a finding that she did not consent to . . . [the] blood draw").

The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"

U.S. CONST. amend. IV. Under the United States Constitution, the taking of a blood specimen is considered a search and seizure. *Schmerber v. California*, 384 U.S. 757, 767 (1966). "Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) ("[A] search authorized by consent is wholly valid."). To constitute a valid waiver of Fourth Amendment rights through consent, a suspect's consent must be "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). The mere acquiescence to a claim of lawful authority cannot constitute valid consent. *Id*. at 548-49. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *see also Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010) (stating that whether a suspect voluntarily gave consent under the Fourth Amendment is a fact question in which we give deference to the trial court's findings). "The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012)

7

(quoting Schneckloth 412 U.S. 225-26). In Texas, the State has the burden to prove voluntary consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 335. "[N]o one statement or action should automatically amount to coercion such that consistent is involuntary—it must be considered in the totality." *Id*. at 333.

In our review of the videotape, the officer acted professionally and reasonably, and we did not observe any threatening behavior by the officer at any time. The officer testified and the video recording supports that the officer advised Oatis of his right to refuse the blood draw before eliciting Oatis's consent to the blood draw. The trial court could have relied on this evidence to find that Oatis knew he had a right to refuse, but nevertheless, voluntarily consented to the blood draw. While the officer had indicated at the scene of the accident that he believed Oatis's criminal history subjected Oatis to a mandatory blood draw, any impression this statement might have left on Oatis was corrected at the hospital when the officer clearly advised Oatis that he could refuse the blood draw. There is no evidence in the record that Oatis was subjected to any coercion or duress when giving his consent. Based on all of the circumstances of this case, it appears that Oatis's consent was voluntary, it was not coerced by threats or force, and was not granted only in submission to a claim of lawful authority. Viewing the totality of circumstances in the light most favorable to the trial court's ruling, we conclude

the trial court did not abuse its discretion in finding Oatis freely, voluntarily, and knowingly consented to the submission of a specimen of blood. Accordingly, we conclude the trial court did not err in denying Oatis's motion to suppress the results of the blood test because Oatis consented to the search. We decide Oatis's first point of error against him. Because resolution of the consent issue is dispositive of the appeal, we need not address the merits of the remaining issues.

We affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 2, 2014
Opinion Delivered July 29, 2015
Do not publish
Before McKeithen, C.J., Kreger, and Horton, JJ.