

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0119-12

**CASEY RAY FIENEN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH COURT OF APPEALS
## FANNIN COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, KEASLER, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., filed a concurring opinion. WOMACK, J., concurred. MEYERS, J., not participating.

### O P I N I O N

Appellant, Casey Ray Fienen, was arrested for driving while intoxicated (DWI). When the trial court denied his pre-trial motion to suppress, Appellant pled guilty and was convicted of DWI. The Sixth Court of Appeals held that Appellant acted voluntarily when he submitted a breath specimen and thus affirmed the trial court's decision to admit the evidence. *Fienen v. State*, No. 06-11-00087-CR, 2011 Tex. App. LEXIS 8205, at *9

(Tex. App.—Texarkana Oct. 18, 2011) (mem. op., not designated for publication). We affirm the court of appeals.

## I. BACKGROUND

On January 31, 2010, George Robinson of the Fannin County Sheriff's Office stopped Appellant's vehicle when he witnessed it cross the center line and drive on the improved shoulder. He contacted Texas Department of Public Safety (DPS) Officer Carmen Barker to assist with the field sobriety tests.[1] Upon Barker's arrival and throughout the encounter, Appellant conversed comfortably and familiarly with Barker. For example, Appellant asked Barker if she was from a particular area, and when she responded affirmatively, Appellant informed her that he had been there and it was very nice. Appellant also told Barker that one of his friends had previously been stopped by her and that he had spoken highly of the trooper. In addition, Appellant informed Barker that he had dentures and four titanium plates on the left side of his face due to a fight that occurred less than a year before. And when a vehicle drove by the scene, Appellant shared with Barker that he had gone with the driver of that vehicle to Red Lobster the night before.

After administering the field sobriety tests and a portable breathalyzer test, Barker believed that Appellant showed signs of intoxication and arrested him for DWI. Upon arrest, Appellant was placed in the trooper's patrol vehicle. Appellant asked Barker if

---

[1]A DVD recording from Barker's in-car camera was made and admitted into evidence at the pretrial hearing on Appellant's motion to suppress.

everything had been recorded, and when she answered affirmatively, he exclaimed,

"Alright. That's awesome." He also apologized if he "was being disrespectful in any

way."

Barker provided Appellant with a copy of the DWI statutory warning form and

read the warnings to him. *See* TEX. TRANSP. CODE § 724.015.[2] Barker then asked

Appellant if he would be willing to provide a breath or blood specimen, and Appellant

refused.

While Appellant was seated in the patrol vehicle, Barker contacted dispatch with a

request to contact the county judge so that he could meet them at the hospital to sign and

execute a blood search warrant. Overhearing the conversation, Appellant asked Barker,

"You take my blood from my arm or I blow again?" Barker responded, "No sir." When

she tried to elaborate, she was interrupted by Appellant who stated, "If I give you a

breathalyzer, I am not getting the needle stuck in me." Barker then continued explaining

---

[2]At the time of Appellant's arrest, Section 724.015 of the Texas Transportation Code required, in part, that
> Before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that:
>> (1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;
>> (2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days; . . . .

The statute was later amended to also require a warning that "if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person." Act of May 23, 2011, 82nd Leg., R.S. ch. 674 § 2011 Tex. Sess. Law serv. 1627 (West).

that, because Appellant had refused to provide a breath or blood specimen, "we contact [the county judge], he meets us at the hospital, he signs the blood search warrant, and we take your blood." Appellant inquired if blood would be taken "even though it is against my religion?" Barker responded, "Yes." Appellant stated, "I'll give you my breath. You ain't taking my blood, that's crazy. I hate needles. . . . I'm just deathly terrified of needles." Barker then inquired if Appellant would prefer to give a breath sample. Appellant consented.

Barker called dispatch to cancel the request for the judge. However, seconds later Appellant withdrew consent and reiterated, "It's against my religion to have my blood drawn." Consequently, Barker contacted dispatch and asked them to call the judge again. When Barker asked Appellant to sign a form indicating his refusal to give a specimen, Appellant asked, "If we go to the hospital, you're really going to hold me down and take my blood?" Barker responded, "Yes, sir." Appellant replied, "Or I blow in the machine." The trooper responded, "Correct." Appellant then asked about the results of his earlier breath test, and Barker informed him that she could not share that information. To clarify Appellant's intentions, Barker asked, "Do you want to give a specimen of your breath or do you want to go to the hospital and give a specimen of your blood?" Appellant commented, "If I try to refuse giving a specimen of blood, it's probably going to be like assault or something of that nature, right?" Barker repeated her previous question. Appellant replied, "I don't want a needle in me, but this is awful." After Appellant made

an unrelated inquiry about whether Barker knew a certain individual, he consented to the breathalyzer test, stating, "Go get the blower. I'm not getting a needle in me." Appellant also apologized to Barker for changing his mind so many times. The breath-test results indicated that Appellant was intoxicated.

Appellant filed a pre-trial motion to suppress evidence. At the hearing on the motion to suppress, Appellant argued that the results of the breathalyzer test should be suppressed because Barker gave extra-statutory warnings, and such warnings resulted in psychological pressure that amounted to coercion. The trial court denied the motion, reasoning,

> . . . [I]t's apparent to me that Appellant is the one that said "will you hold me down and stick a needle in me?" [Barker's] just answering that question. She's not going beyond the statutory warnings and saying to him, "if you don't take a breath test, we're going to hold you down and take blood out of you."
>     The fact that [Appellant] heard her [Barker] call in the request [for a search warrant to draw blood], and the call and the request for the judge to meet means she's doing exactly what her job is and what she's been hired to do.

Then, when Appellant advised the trial court that he was objecting on the basis of *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993), the trial court opined,

> Well, in Erdman, it says the Court of Appeals has explained that the focus of Erdman is on whether the alleged extra statutory language concerns the consequences of refusing to take a breath test. I don't think in Erdman it was talking about, you don't take the breath test, we're going to take blood from you. It was talking more about the consequences of what happens if you don't take the breath test legally to you. Sort of like what you were alluding to, you lose your license for a certain period of time and those type of things. So, I don't know that it's exactly on point in this particular case.

That's my ruling.

Appellant subsequently agreed to a plea bargain and was sentenced to six months' confinement, probated for a period of twelve months.

## II. SIXTH COURT OF APPEALS

On direct appeal, Appellant relied on *Erdman* to argue that the statements made by Barker were coercive and that he did not voluntarily consent to providing a breath specimen. *Fienen*, 2011 Tex. App. LEXIS 8205, at *4. The Sixth Court of Appeals disagreed and affirmed the judgment of the trial court.

The court of appeals determined that the lesson from *Erdman* was that law enforcement may not give any warnings not in the statute, but it held that *Erdman* was not applicable in this case. *Id.* at *9-11. The court explained that Appellant was not advised of non-statutory consequences that might result from his refusal to provide a specimen. Rather, upon Appellant's initial refusal, Barker simply carried out the necessary steps to fulfill her job, and later responded fairly and accurately to a conversation initiated by Appellant. Additionally, the court pointed out that the information given to Appellant was the very information that has since been added to the statute. *See* TEX. TRANSP. CODE § 724.015(3). Finally, the court believed that the video recording of the exchange between Barker and Appellant reflected that Barker was professional, even though repeatedly questioned and interrupted by Appellant. Accordingly, the court of appeals did not believe that the trial court abused its discretion in admitting the breath-sample

evidence. *Fienen*, 2011 Tex. App. LEXIS 8205, at *11.

We granted Appellant's petition for discretionary review to determine whether "[t]he Court of Appeals erred in concluding that [Appellant] voluntarily provided a specimen of his breath following his arrest for DWI, contrary to the holdings in *Erdman*, *Hall*, and *Sells*." *See Erdman*, 861 S.W.2d 890; *Hall v. State*, 649 S.W.2d 627 (Tex. Crim. App. 1983); *State v. Sells*, 798 S.W.2d 865 (Tex. App.—Austin 1990, no pet.) (per curiam).

## III. ARGUMENTS OF THE PARTIES

Appellant argues that the breath specimen he provided was not voluntary and that *Erdman* controls the disposition of this case because Barker's warnings that she would obtain a search warrant and draw blood unquestionably impacted his decision to submit a breath sample. Appellant contends that the implied-consent statute in effect at the time of his arrest required that he be warned of two consequences of refusing to provide a specimen (that the refusal can be used against him at trial and that his drivers license will be automatically suspended), and warning of any other consequence of refusal (*e.g.,* obtaining a warrant to draw blood) was improper. Further, according to Appellant, even if the statements at issue were included in the statute as it now exists, Barker did not provide the exact warning. Appellant claims that Barker said that she *was going to* get a warrant and that blood *would be* forcibly taken from his body, thus couching her statements in absolute terms rather than the permissive ("may") terms of the current

statute. *See* TEX. TRANSP. CODE § 724.015(3).

The State responds that Barker's statements about obtaining a warrant did not constitute a warning at all. The State argues that it was only after Appellant refused to provide a specimen that Barker contacted dispatch and initiated the process to obtain a search warrant, and a statement made after the refusal has already occurred, by definition, cannot be a warning of the consequences of refusing.

Additionally, the State avers that the pursuit of a search warrant is not an extra-statutory consequence of refusing to give a breath or blood sample under *Erdman*. The State claims that the consequences contemplated by *Erdman* and its progeny are all of a punitive nature, and Barker's warning about obtaining a warrant was neither an additional punitive measure nor an inherently coercive "threat" prohibited by *Erdman*.

## IV. ANALYSIS

Any person who is arrested for DWI is deemed to have given consent to submit to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance. TEX. TRANSP. CODE § 724.011(a). However, a person retains an absolute right (subject to certain exceptions not relevant here) to refuse a test. *Id.* § 724.013. That refusal must be strictly honored. *McCambridge v. State*, 712 S.W.2d 499, 504 n.16 (Tex. Crim. App. 1986); *Turpin v. State*, 606 S.W.2d 907, 913-14 (Tex. Crim. App. 1980). We have explained this apparent inconsistency: "'[C]onsent being implied by law, a driver

may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission.'" *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988) (quoting *State v. Spencer*, 750 P.2d 147, 153 (Ore. 1988)), *overruled on other grounds by McCambridge v. State*, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989).

A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical *or* psychological pressures brought to bear by law enforcement. *Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011); *see Hall*, 649 S.W.2d at 628. The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Schneckloth v. Bustamonte*, 412 U.S. 219, 225-26 (1973); *Meekins*, 340 S.W.3d at 459. We "review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person." *Meekins*, 340 S.W.3d at 459. The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

Critical to a consent analysis is that the fact finder must consider the *totality of the circumstances* in order to determine whether consent was given voluntarily. *Meekins*, 340 S.W.3d at 459 (citing *Schneckloth*, 412 U.S. at 233); *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). "The trial judge must conduct a careful sifting and

balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Meekins*, 340 S.W.3d at 459. Accordingly, it follows that, because the fact finder must consider all of the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality.

The court of appeals's analysis centered on the relation of this case to *Erdman*, 861 S.W.2d 890. In *Erdman*, a DPS officer gave the appellant (a DWI suspect) the statutory warnings as they existed at the time. The officer also told the appellant that, if he refused to provide a breath sample, DWI charges would be filed against him and he would be placed in jail that night. *Id.* at 891. The officer further explained that if appellant took the intoxilyzer test and passed it, he would not be charged with DWI that night, but if he took it and failed it, he would be charged that night. *Id.* The appellant subsequently submitted to an intoxilyzer test, and the trial court overruled the appellant's motion to suppress the results of that test because the officer's statements were not coercive. *Id.* at 891-92. But, on appeal, this Court disagreed.

Initially, the *Erdman* Court noted that the statute in effect provided that a person arrested for DWI "must be warned that two specific consequences--only two--will definitely and directly result from a *refusal to submit to a breath test*." *Id.* at 893 (emphasis added). Then, turning to the case at hand, we determined that "[t]he non-statutory information conveyed to appellant (that he would be jailed and charged with

D.W.I.) was of the type that would normally result in considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a breath sample." *Id.* at 894. Because the appellant was warned of those extra-statutory consequences and "[g]iven the complete absence of any record evidence showing that this non-statutory information given to appellant had *no* bearing on his decision to consent," we held that the appellant's consent was not voluntary. *Id.* We emphasized that

> [L]aw enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed to D.W.I. suspects may have the effect–either intended or unintended–of undermining their resolve and effectively coercing them to consent.

*Id.*

This Court no longer finds the holding or the reasoning of *Erdman* persuasive. In its application, the *Erdman* Court failed to consider the circumstances surrounding the DPS officer's statements when analyzing voluntariness. Consequently, it failed to properly analyze the issue because voluntariness of consent must be analyzed based upon the totality of the circumstances. *See Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985). Instead, the Court simply assumed that the non-statutory language conveyed regarding the consequences of refusal "was of the type that would normally result in considerable psychological pressure." *Erdman*, 861 S.W.2d at 894. The Court's analysis focused entirely on that non-statutory language. And in finding that there was no evidence that the non-statutory information conveyed about the consequences of refusal

had "no bearing on [the appellant's] decision to consent," the Court disregarded other evidence presented at the hearing on the motion to suppress. As the dissent originally highlighted, evidence was introduced that supported the trial court's finding that the appellant's consent was voluntary including the fact that the appellant was vacillating on whether to submit to the intoxilyzer test, the officer had followed the same procedure that he used with other DWI suspects, and the officer was being truthful. *Id.* at 897-98 (Overstreet, J., dissenting).

As a consequence of *Erdman*'s confused and flawed reasoning, its progeny has focused on whether the alleged extra-statutory warnings concerned the consequences of refusing to take the breath test (or the consequences of passing or failing the breath test). According to those cases, extra-statutory statements about the consequences of passing or failing the breath test "are not of the same coercive nature" as statements about the consequences of refusing to take a breath test. *Gette v. State*, 209 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Ness v. State*, 152 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)). Consequently, when the extra-statutory warnings relate to the consequences of refusing to provide a specimen, the courts of appeals have held that the statements are inherently and necessarily coercive and, thereby, give rise to the inference that the consent was coerced. *Id.*; *Sandoval v. State*, 17 S.W.3d 792, 796 (Tex. App.—Austin 2000, pet. ref'd). And in such a situation, the courts have decided that the accused need not show a causal connection between the improper

warning and the decision to submit to the breath test, and instead, the State must present evidence that the consent was in fact voluntary. *Sandoval*, 17 S.W.3d at 796. In contrast, when extra-statutory warnings relate to the consequences of passing or failing the breath test, the courts of appeals have required that the defendant show a causal connection between the warning and the decision to submit to the test. *Urquhart v. State*, 128 S.W.3d 701, 705 (Tex. App.—El Paso 2005, pet. ref'd); *Tex. Dep't of Pub. Safety v. Rolfe*, 986 S.W.2d 823, 827 (Tex. App.—Austin 1999, no pet.); *Sandoval*, 17 S.W.3d at 796.

These rules developed by *Erdman*'s progeny are contrary to the fundamental rules of determining whether consent was rendered voluntarily. Importantly, these rules, like the analysis of *Erdman* itself, overlook the fact that the voluntariness of consent must be analyzed based upon the totality of the circumstances. *See Meeks*, 692 S.W.2d at 510. No statement—whether it refers to the consequences of refusing a breath test, the consequences of passing or failing a breath test, or otherwise—should be analyzed in isolation because its impact can only be understood when the surrounding circumstances are accounted for. In other words, allowing any statement by itself to control a voluntariness analysis contradicts the basic rule that voluntariness is to be determined based upon a case-specific consideration of all of the evidence. *See Meekins*, 340 S.W.3d at 459. Hence, non-statutory language does not automatically amount to coercion or create an inference thereof.

Further, the rules developed post-*Erdman* misapply the relevant burden of proof in addressing warnings regarding the consequences of passing or failing a breathalyzer test. It is well established that, when the issue is raised in a motion to suppress, the State must prove voluntary consent by clear and convincing evidence. *Weaver*, 349 S.W.3d at 526. Contrary to this notion, the courts of appeals have placed a burden on the defendant to show that he was coerced, specifically that there was a causal connection between the warning and his decision to submit to the test. This should not be so—once the defendant has raised the issue in his motion, the burden of proof is on the State, and it does not shift back to the defendant.

Therefore, because of its flawed reasoning and the flawed caselaw that has resulted from it, we overrule *Erdman*. Law-enforcement officers are prohibited from using physical or mental compulsion to obtain consent, but statements made by law-enforcement officers to suspects must be analyzed under the totality of the circumstances. Moreover, it is the State's burden to prove voluntary consent by clear and convincing evidence.

Turning to the case before us, we will uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460. When reviewing a trial court's ruling on a motion to suppress evidence, we give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and

demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de

novo questions of law and "mixed questions of law and fact" that do not depend upon

credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App.

2006). Viewing the totality of the circumstances in the light most favorable to the trial

judge's ruling, we conclude that the judge did not abuse his discretion in finding that

Appellant voluntarily consented to providing a breath sample.

The comments at issue occurred when Barker responded to Appellant's own

questions,[3] and the trooper did not provide any information that was untrue as Appellant

could have been taken to the hospital and a blood search warrant obtained. Although

Barker conveyed what would happen in more definite terms than suggested by the

(present) statute, she provided only the most basic information and did not linger or

prolong the exchange by explaining in detail the intricacies of obtaining the search

warrant (*e.g.*, that the blood search warrant must be approved by a neutral and impartial

magistrate and that the judge may sign the search warrant only if he believes that it is

supported by probable cause). Furthermore, this language was not coercive when the

surrounding circumstances are considered. *See Johnson v. State*, 803 S.W.2d 272, 287

(Tex. Crim. App. 1990) (stating that "a consent to search given in response to a threat to

seek or obtain a search warrant has been upheld as voluntary"); *Beaupre v. State*, 526

---

[3]The fact that Barker's comments were in response to Appellant's questions does not by itself render the trooper's statements non-coercive. *See, e.g., Hall,* 649 S.W.2d 627 (holding that the evidence raised the issue of voluntariness of consent even though the officer's comments were in response to an inquiry by the suspect). It is, however, a factor to consider.

S.W.2d 811, 815 (Tex. Crim. App. 1975) ("The sheriff's statement that he was going to obtain a warrant to search the automobile did not render Mrs. Beaupre's subsequent consent for the search involuntary.").

Appellant was informed that he could refuse the breathalyzer test, and in fact, he had done so at least two times before his ultimate consent. Upon Appellant's initial refusal, Barker simply continued following standard protocol by contacting dispatch and preparing to go to the hospital and obtain a search warrant. She did so despite continued interruptions by Appellant. Appellant heard Barker call in the request for the judge and the mention of a blood search warrant, so he was aware of the general process to occur. It was only when Appellant began questioning Barker that the trooper responded with the comments at issue. After Appellant's interruptions and expressed intent to avoid the blood draw (and take the breathalyzer), Barker repeated her question to clarify whether Appellant wanted to give a breath or blood specimen. Barker was not going out of her way to prolong the exchange or exert psychological pressure. Barker did not use threats, deception, or physical touching, or a demanding tone of voice or language. The video recording supports that Barker's demeanor was consistently professional and accommodating, and nothing about Barker's comments or demeanor put undue psychological pressure on Appellant. Further, Appellant's expressed fear of needles does not change the fact that Barker was entitled to seek a search warrant for his blood draw. *See, e.g.,* TEX. TRANSP. CODE § 724.015.

Therefore, under the totality of circumstances, there is clear and convincing evidence that Appellant made a conscious and voluntary decision to consent to the breathalyzer test. Barker's actions were not coercive, and if anything, Appellant had greater information on which to base his decision.

## V. CONCLUSION

When determining whether DWI suspects acted voluntarily, courts are to look at the totality of the circumstances. Law-enforcement officers may not misrepresent the law, but neither are they required to simply repeat the statutory warnings. Here, Appellant voluntarily provided a specimen of his breath following his arrest for DWI. The judgment of the court of appeals is affirmed.

Hervey, J.

Delivered: November 21, 2012

Publish