ACCEPTED
03-15-00109-CR
6860163
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/10/2015 10:03:50 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00109-CR**

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/10/2015 10:03:50 AM
JEFFREY D. KYLE
Clerk

# CHELSEA PODOWSKI,

*Appellant,*

**v.**

# THE STATE OF TEXAS,

*Appellee.*

On appeal from the County Court-at-Law Number Five,
Travis County, Texas
Trial Cause No. C-1-CR-14-205047

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*September 10, 2015*          ATTORNEYS FOR THE STATE OF TEXAS

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE STATE'S ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

    *Reply Point*: The trial court's finding of voluntary consent to the
    intoxilyzer was not clearly erroneous. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Podowski's contentions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Governing legal principles and the standard of review. . . . . . . . . . . . 6

    Officer Marler's one-word response did not render
    Podowski's consent involuntary, as Podowski contends. . . . . . . . . . 8

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX:
    The trial court's findings and conclusions

# INDEX OF AUTHORITIES

**CASES**                                                                        **PAGE**

*Anderson v. State*, 932 S.W.2d 502
(Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bartlett v. State*, 249 S.W.3d 658
(Tex. App.—Austin 2008, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . 7

*Bice v. State*, No. 13-12-00154-CR, 2013 Tex. App. LEXIS 218
(Tex. App.—Corpus Christi Jan. 10, 2013, pet. ref'd)
(mem. op., not designated for publication). . . . . . . . . . . . . . . . . . . 9

*Cook v. State*, No. 05-14-00483-CR, 2015 Tex. App. LEXIS 5797
(Tex. App.—Dallas June 9, 2015, no pet.)
(mem. op., not designated for publication). . . . . . . . . . . . . . . . . . . 9

*Fienen v. State*, 390 S.W.3d 328
(Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Florida v. Bostick*, 501 U.S. 429
(1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Meekins v. State*, 340 S.W.3d 454
(Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robinson v. State*, 851 S.W.2d 216
(Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schneckloth v. Bustamonte*, 412 U.S. 218
(1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Worku v. State*, No. 14-13-00047-CR, 2014 Tex. App. LEXIS 3621
    (Tex. App.—Houston [14th Dist.] April 3, 2014, no pet.)
    (mem. op., not designated for publication). . . . . . . . . . . . . . . . . . 9, 10, 11

## STATEMENT OF THE CASE

Podowski was charged by information with driving while intoxicated with a blood-alcohol concentration greater than 0.15, a Class A misdemeanor alleged to have been committed on March 29, 2014. CR 11. After the trial court overruled her suppression motion, Podowski entered a plea of no contest. CR 29. On February 5, 2015, the trial court sentenced her to 180 days in jail and a $2,000 fine, but suspended imposition of this sentence and placed Podowski on community supervision for fifteen months.[1] Podowski gave written notice of appeal on the day of sentencing. CR 38.

## ISSUE PRESENTED

Was Podowski's consent to take the intoxilyzer test rendered involuntary as a matter of law after the arresting officer incorrectly told her that her license would be suspended whether she took the test or not?

---

[1]    As conditions of probation, Podowski is required to comply with an ignition interlock program, complete 60 hours of community-service restitution, undergo a drug and alcohol assessment, and attend counseling or treatment. CR 33–36.

# BACKGROUND

The trial court's findings and conclusions, which may be found between pages 25 and 27 of the clerk's record, are appended. On March 29, 2014, Kyle Jennings of the Austin Police Department stopped the car Podowski was driving around 1:00 a.m. after he saw it make several lane changes without signaling intent, fail to maintain a single lane, hesitate before proceeding after a red light turned green, and swerve dangerously close to two curbs. 2 RR 4–8; CR 25.

After Jennings made the stop, Officer Marler arrived to investigate intoxication. 2 RR 18. Podowski originally agreed to take a portable breath test, but when it arrived, she refused. 2 RR 23. After administering field sobriety tests, Officer Marler arrested her for DWI. 2 RR 20–21. He then read her the DIC-24 statutory warning form. 2 RR 21; CR 26. The DIC-24 explains an individual's rights regarding whether to consent to give a sample of her breath or blood.

Afterwards, the following exchange took place, and the officer's answer of "None" is what motivates this appeal. This transcription of the exchange is taken from State's Exhibit #1, an on-scene DVD recording.

| 2:02:44 | OFFICER MARLER: | I am now requesting a specimen of your breath. |
| 2:02:48 | PODOWSKI: | (Laughs) Uh, you're requesting a specimen of my breath? |
| 2:02:52 | OFFICER MARLER: | Correct. |
| 2:02:53 | PODOWSKI: | Okay . . . alright. |
| 2:02:55 | OFFICER MARLER: | Are you going to give a specimen of your breath? |
| 2:02:57 | PODOWSKI: | Uh, what are the consequences if I don't? I'm sorry, I know that you just read that all to me, but it was very, like, not . . . [indistinguishable]. |
| 2:03:06 | OFFICER MARLER: | It extends the amount of time in which your license is suspended. |
| 2:03:10 | PODOWSKI: | Oh, okay. Uh, in which case is my license not going to be suspended at all? |
| 2:03:15 | OFFICER MARLER: | None. |
| 2:03:16 | PODOWSKI: | Oh, okay. |

| 2:03:17 | OFFICER MARLER: | So I am asking for a sample of your breath. Are you willing to give a sample of your breath? It's a yes or a no. |
| 2:03:23 | PODOWSKI: | Yes. I'm willing to do that. |

4 RR State's Exhibit #1 @ 2:02:44–2:03:25; CR 26. Officer Marler then drove Podowski to the breath-alcohol testing (BAT) bus. 2 RR 22.

Podowski testified that the intoxilyzer operator told her that the breath test was not optional, and that she felt that she did not "really have a choice" as to whether to submit to it. 2 RR 29. She also testified, however, that she took the breath test because she thought that cooperating would redound to her advantage. 2 RR 30–31. The trial court found that Podowski thought that the consequences "would be less" if she took the breath test. CR 26. The trial court also found that the intoxilyzer operator, who did not remember Podowski, typically tells arrestees who ask that they do not have to take the intoxilyzer test. CR 26.

Breath testing an hour and a half after the stop produced a .165/.164 result. 4 RR State's Exhibit #2 (the breath slip). The trial court concluded that:

- Officer Marler's incorrect response to Podowski's question "In what case will my license not going to be suspended" did not render her breath test compliance involuntary because a reasonable person under these circumstances would not have believed that compliance would lead to a more favorable result; and

- Podowski's confusion regarding the DWI statutory warning was not a result of coercion but rather of her own mental impairment by alcohol intoxication.

CR 27.

## SUMMARY OF THE STATE'S ARGUMENT

In *Fienen,* the Court of Criminal Appeals held that no one statement or action should automatically amount to coercion such that consent is rendered involuntary. Podowski disregards the totality test that *Fienen* requires for these voluntariness inquiries, and attempts to breathe life back into *Erdman*, which *Fienen* overruled. But viewing the totality of the circumstances with the "almost total deference" that the law requires, the trial court properly found that Podowski's will was not overborne or critically impaired such that her consent to the intoxilyzer must have been involuntary. The arresting officer read Podowski the statutory warning verbatim, and provided her with a written copy to follow as he read. The

5

officer's answer to Podowski's first question was correct: refusing the intoxilyzer would mean a longer license suspension. 4 RR 2:03:06; CR 26.

Nothing points to the officer's mistaken answer of "none" as having induced Podowski's giving of a breath specimen. The trial court's denial of suppression relief therefore was not clearly erroneous.

## ARGUMENT

*Reply Point*: **The trial court's finding of voluntary consent to the intoxilyzer was not clearly erroneous.**

**Podowski's contentions**

Podowski contends that Officer Marler's one-word misrepresentation of the law "created a deception that coerced Appellant P[o]dowski into an involuntary acquiescence[.]" Podowski's Brief, p. 9.

**Governing legal principles and the standard of review**

A consensual warrantless search is valid if the consent is voluntarily given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973); *Fienen v. State,* 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). Whether consent was voluntarily given is a question of fact. *Fienen,* 390 S.W.3d at 333.

6

Consequently, reviewing courts afford "almost total deference to a trial court's determination of [voluntariness] that the record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id*. at 335. Reviewing courts will uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Id*. A finding is clearly erroneous when the reviewing court is "left with a firm conviction that a mistake has been committed." *Robinson v. State*, 851 S.W.2d 216, 226 (Tex. Crim. App. 1991).

Courts gauge voluntariness from the perspective of a reasonable person in the defendant's position, "without regard for the subjective thoughts or intent of either the officer or the citizen." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). The reasonable person test "presupposes an innocent person." *Florida v. Bostick*, 501 U.S. 429, 438 (1991); *see Anderson v. State*, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996); *Bartlett v. State*, 249 S.W.3d 658, 669 (Tex. App.—Austin 2008, pet. ref'd). Consent is involuntary if a reasonable actor's will would have been "overborne" or "critically impaired" such that consent "must have been

7

involuntary." *[Fienen, 390 S.W.3d at 333](#)*. No single police action or statement amounts to coercion, because voluntariness must be decided based upon the totality of the circumstances. *Id.* On appeal, these circumstances are viewed in the light most favorable to the trial court's ruling. *Id.* at 335.

> **Officer Marler's one-word response did not render Podowski's consent involuntary, as Podowski contends.**

No one statement, examined outside the totality of the circumstances, can render consent involuntary. *Id.* at 333.

> No statement—whether it refers to the consequences of refusing a breath test, the consequences of passing or failing a breath test, or otherwise—should be analyzed in isolation because its impact can only be understood when surrounding circumstances are accounted for. In other words, allowing any statement by itself to control a voluntariness analysis contradicts the basic rule that voluntariness is to be determined based upon a case-specific consideration of all the evidence.

*Id.* at 335.

Since the 2012 *Fienen* decision, intermediate courts have applied the *Fienen* rule in the context of technically inaccurate warnings, holding that an inaccurate warning, alone, without any evidence that the appellant was

pressured physically or psychologically, is insufficient to invalidate a voluntary consent. *Cook v. State*, No. 05-14-00483-CR, 2015 Tex. App. LEXIS 5797, at *6 (Tex. App.—Dallas June 9, 2015, no pet.) (mem. op., not designated for publication); *Worku v. State*, No. 14-13-00047-CR, 2014 Tex. App. LEXIS 3621, at *21 (Tex. App.—Houston [14th Dist.] April 3, 2014, no pet.) (mem. op., not designated for publication); *Bice v. State*, No. 13-12-00154 CR, 2013 Tex. App. LEXIS 218, at * 13 (Tex. App.—Corpus Christi Jan. 10, 2013, pet. ref'd) (mem. op., not designated for publication).

In *Worku*, for instance, the defendant had been arrested for driving while intoxicated after failing field sobriety tests. *Worku*, 2014 Tex. App. LEXIS 3621, at *3. The officer read the DWI statutory warning in English, which Worku understood. *Id*. at *4. A friend of Worku's also translated the warnings into Worku's native Amharic. *Id*. at * 20. Afterwards, the officer told Worku that if he agreed to a breath test, his license would be suspended for 90 days, but he would be able to get a temporary license to drive to and from work. *Id*. at *21.

Worku argued at trial that his consent to the breath test was made involuntary by the officer's failing to translate the warnings into Amharic, by giving an extra-statutory warning, and by misstating the law on the length of time his license could be suspended. *Id*. at *20. The Fourteenth Court observed that Worku had been correctly advised twice before the complained-of statements were made. *Id.* at *21. And, although Worku consented after hearing the inaccurate warnings, "that fact alone, without evidence that appellant was pressured physically or psychologically, is insufficient to invalidate an otherwise voluntary consent." *Id*.

Podowski was read the statutory warning verbatim and given a written copy to read, just as the *Worku* defendant was. 2 RR 21. Afterwards, Officer Marler requested a specimen of Podowski's breath, to which she consented. 4 RR State's Exhibit #1 @ 2:02:44–2:02:53. Officer Marler asked once more to confirm her consent. 4 RR State's Exhibit # 1 @ 2:02:55. This time, she asked about the consequences of refusing. 4 RR State's Exhibit # 1 @ 2:02:57. Officer Marler correctly responded that refusing to give a breath specimen would extend the amount of time her license would be

suspended. 4 RR State's Exhibit # 1 @ 2:03:06. Like *Worku*, Podowski had been correctly advised prior to the incorrect one-word answer, and had even consented to the breath test before the inaccurate statement was made. And, Podowski testified that she believed that the license-suspension consequences would be less if she took the breath test. 2 RR 30. This belief was correct.

Nothing in the totality of the circumstances shows that Podowski's will was overborne or critically impaired such that her consent must have been involuntary. Instead, the record shows that Podowski's judgment was critically impaired by extreme intoxication. The trial court's finding of voluntary consent therefore was not clearly erroneous. *Worku*, 2014 Tex. App. LEXIS 3621, at \*22.

## PRAYER

For these reasons, the Travis County Attorney, on behalf of the State of Texas, asks this Court to overrule the point of error and affirm the judgment of conviction for driving while intoxicated.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

_____
Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas  78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document (counting all of its parts except for the appendices) contains 2,366 words.

_____
Giselle Horton

## CERTIFICATE OF SERVICE

I certify that I have sent a complete and legible copy of this State's Brief via electronic transmission, to Ms. Podowski's attorney of record, Mr. James Gill, at jgill@austin-criminallawyer.com, on or before September 17, 2015.

_____
Giselle Horton
Assistant Travis County Attorney

# The trial court's findings and conclusions

C-1-CR-14-205047

| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW NUMBER 5 |
| | § | |
| CHELSEA PODOWSKI | § | TRAVIS COUNTY, TEXAS |

## FINDING OF FACTS AND CONCLUSIONS OF LAW

The Court held hearings on November 25, 2014 and December 4, 2014 on the Defense Motion to Suppress. The motion to suppress was urged only with regard to reasonable suspicion to stop the defendant and the voluntariness of the giving of the defendant's breath specimen. At the pretrial hearings two State's exhibits were admitted, the DVD of the stop and the breath test portion of the police report. Four witnesses testified: Officer Kyle Jennings, the Defendant Chelsea Podowski, Officer Scott Marler, and Intoxilyzer Operator Keith Wade. Based on the evidence presented before the Court, the Court makes the following findings:

## FINDINGS OF FACT

1. On March 29, 2014 at about 1:02a.m. Austin Officer Kyle Jennings was on patrol travelling north bound on South Lamar Blvd.
2. Traffic at that time was light but steady with other cars on the road travelling both directions.
3. Officer Jennings observed a gold Toyota Prius driving ahead of him at the 800 block of South Lamar.
4. Officer Jennings observed the vehicle move into the center turn lane without signaling intent by a half car length and return to the left hand lane.
5. Officer Jennings observed the vehicle move into the center turn lane two more times without signaling.
6. At the intersection of South Lamar Blvd. and Barton Springs Road the vehicle hesitated after the light changed from red to green before proceeding.
7. After proceeding through this intersection the vehicle swerved dangerously close to a dividing curb.
8. The vehicle then swerved again with its wheels touching the line dividing her lane from a left hand turn lane.
9. Immediately after crossing the bridge over Lake Lady Bird the vehicle swerved again with its driver's side wheels crossing the white dividing line between the left hand lane and the oncoming traffic lane and nearly hitting the beginning of the dividing curb.
10. As the vehicle approached 5th Street its wheels crossed the dividing line into the right lane briefly.

25

2S

11. The vehicle failed to drive in a single marked lane 7 times in approximately 9 blocks.

12. The vehicle's driving outside of its lane was not safe.

13. Officer Jennings activated his overhead lights after 5th street and the vehicle swerved quickly into the left turn lane without signaling. The vehicle;s driver turned on the signal when the light changed.

14. The vehicle passed several places where it could have pulled over but finally did so into a parking lot on W. 6th Street.

15. Officer Jennings identified the sole occupant and driver of the vehicle as Chelsea Podowski.

16. Officer Scott Marler, an Austin police officer certified to standardized field sobriety tests was dispatched to the scene.

17. After conducting the SFSTs Officer Marler arrested Chelsea Podowski for Driving While Intoxicated.

18. Officer Marler read Chelsea Podowski the required DIC-24 statutory warning form verbatim.

19. Chelsea Podowski and Officer Marler had the following conversation: Podowski: "Uh, you're requesting a specimen of my breath?" Marler: "Correct" Podowski: "Okay, alright" Marler: "Are you going to give a specimen of your breath?" Podowski: "Ah what are the consequences if I don't. I'm sorry I know you just read that all to me, but it was very like not.." Marler: "It extends the amount of time in which your license is suspended." Podowski: "Oh, okay." Podowski: "In what case will my license not going to be suspended". Marler: "None". Podowski: "Oh, okay." Marler: "So I am asking for a sample of your breath. It is a yes or a no." Podowski: "Yes".

20. Officer Marler drove Chelsea Podowski to the 'BAT' bus to give a breath specimen.

21. The intoxilyzer operator on duty was Keith Wade.

22. Mr. Wade does not recall Ms. Podowski in particular.

23. Mr. Wade did conduct a breath test with Ms. Podowski and the results were .165 and .164.

24. Mr. Wade tells defendants arrested on a non-"no refusal" day that they do not have to take the breath test if they ask.

25. Chelsea Podowski was confused by the information contained in the DIC-24 when read to her by Officer Marler.

26. Ms. Podowski thought that if she said no she would be forced to take the breath test and that the consequences would be less if she took the breath test.

27. Ms. Podowski thought it would look like she was complying if she took the breath test and knew that her license would be suspended.

28. Ms. Podowski's mental faculties and reasoning were impaired by alcohol intoxication.


## CONCLUSIONS OF LAW

1. Officer Jennings had reasonable suspicion to stop Ms. Podowski for violation of Texas Transportation Code Sec. 545.060 because she repeatedly drove into other lanes besides her own.

2.     Officer Jennings had reasonable suspicion to stop Ms. Podowdki to investigate the offense of Driving While Intoxicated based upon the time of night and Ms. Podowski's driving.

3.     Officer Marler's incorrect response to Ms. Podowski's question "In what case will my license not going to be suspended?" does not deem her breath test compliance involuntary because it would not lead a reasonable person under these circumstances to believe that compliance with a breath test would lead to a more favorable result.

4.     Ms. Podowski's confusion regarding the DIC-24 is not a result of coercion but rather her own mental impairment.

Signed this the ____26____ day of ____Jan._____ 2015.

NANCY HOHENGARTEN
Presiding, County Court at Law 5

FILED FOR RECORD
2015 JAN 27 PM 2:20
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS