

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00214-CR

TROY LEE APPLIN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 42nd District Court
Taylor County, Texas
Trial Court No. 26378A, Honorable Thomas M. Wheeler, Presiding

August 22, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Troy Lee Applin appeals his conviction by jury of the second-degree felony offense of possession of phencyclidine[1] and the resulting sentence of eight years of imprisonment. Through one issue, appellant contends the trial court erred by denying his motion to suppress. We will affirm.

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2016).

## Background

The indictment charged appellant with possession of a controlled substance, phencyclidine, in an amount less than one gram, and set forth appellant's two prior felony convictions for possession of cocaine. Before trial, appellant filed a motion to suppress seeking exclusion of physical and testimonial evidence. The trial court held a hearing on the motion.

At the hearing, an Abilene Police Department detective, Joel Harris, testified. He said he was working an "extra duty" security shift at the Mall of Abilene when shoppers reported a disturbance in the parking lot. The report was of a man "screaming, yelling, punching cars, even jumping off of planters and kind of landing on his head, stuff like that."

Harris and other members of the mall security team responded, finding appellant "lying in the roadway of the parking lot just off the curb" in front of a restaurant. Harris saw "blood in several places" on appellant but could not determine his specific injury. Harris told the court appellant "was lying down, breathing heavily, appeared to be sweating profusely, was yelling something. Most of it, I did not understand. I recall him yelling a name, Sheldon, I think, a couple of times." Harris described appellant as being "in some kind of crisis." Officers called an ambulance for appellant because they were unable to determine appellant's injuries. Harris testified appellant "appeared to be under the influence of some kind of substance, narcotic."

While they waited for the ambulance, Harris stated, appellant appeared to be upset, continued yelling, got up and started walking toward the mall. Concerned for

appellant's safety and that of shoppers, the officers went to appellant to detain him and "told him to come back and sit down. He refused." Harris and another officer tried to detain or subdue appellant, who began to "actively resist." Harris continued, describing the efforts the officers undertook to subdue and handcuff appellant.

During cross-examination, Harris said that at the time, he believed appellant might have committed "three possible offenses: One was obviously public intoxication; we also had disorderly conduct; and based on our initial reports of him punching cars, I didn't know if we possibly had a criminal mischief, reckless damage, or assault as well." As the officers sat appellant down on a planter to wait for the ambulance, Harris said, appellant continued to "yell things that were incomprehensible."

Officer Kurt Thomas testified also, telling the court he arrived at the mall to see appellant "active[ly] resisting when the officers were trying to restrain him." Thomas assisted the other officers. He also said appellant could have been arrested for disorderly conduct and public intoxication.

Appellant testified at the hearing, giving the court a somewhat different version of the events. He told the court he and his cousin were at the mall shopping. He stated that when officers arrived, he "was sitting on a block fixture right outside the door of the mall entrance." He testified that two officers approached him and asked him for identification. He stated he had an injury to his hand at the time and was wearing a hoodie. He said the officers were asking him "several different types of questions." He tried to reach for his wallet but apparently took too long because the officers "rushed" appellant to the ground. Appellant denied yelling and screaming. He did admit he "struck the ground"

3

with his hand before the officers arrived because he was "going through emotions." Appellant testified he was handcuffed and raised to a "position of on [his] knees, and at that time [he] was searched." He told the court he had not been told he was arrested and did not give the officers consent to search him.

Thomas testified he got inside the ambulance with appellant, and checked appellant's pockets to "make sure that he didn't have any weapons on him." In appellant's pockets Thomas discovered the evidence that led to appellant's prosecution.

The trial court denied appellant's motion to suppress the evidence. Thereafter the cause proceeded to jury trial and appellant was found guilty as charged. Punishment was assessed as noted and this appeal followed.

Analysis

In his sole issue on appeal, appellant limits his argument to a contention the officers did not have reasonable suspicion to detain him. He argues his "actions of screaming and yelling" in the mall parking lot were entirely innocent conduct unrelated to criminal activity.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Gonzales v. State,* No. 07-15-00039-CR, 2015 Tex. App. LEXIS 12177, at *4-5 (Tex. App.—Amarillo Nov. 30, 2015, pet. dism'd) (mem. op., not designated for publication) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). We give almost total deference to the trial court's determination of historical facts and then review *de novo* the trial court's application of the law to those facts. *Id.* (citations omitted). If, as here, the trial court did not make explicit findings of fact, we review the evidence in

4

a light most favorable to the trial court's ruling and assume it made implicit findings of fact supporting its ruling. *Id.* (citing *Carmouche,* 10 S.W.3d at 327-28; *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (party prevailing in trial court is afforded "strongest legitimate view of the evidence and all reasonable inferences")). We review *de novo* questions of law and mixed questions of law and fact that do not depend on evaluation of credibility and demeanor. *Id.* (citing *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012)).

At the suppression hearing the trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Gonzales,* 2015 Tex. App. LEXIS 12177*,* at *5 (citing *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007)). The trial court is able to observe the demeanor and appearance of the witnesses and is, therefore, better positioned to determine witness credibility than an appellate court which may only read the testimony from the record. *Id.* (citing *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)). We will sustain the trial court's suppression ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* (citation omitted). We may not substitute our judgment for that of the trial court; rather, we will affirm its ruling if it falls within the zone of reasonable disagreement. *Id.* (citation omitted).

There is no dispute that the officers' interaction with appellant escalated at a point from a mere encounter to a detention. *See Crain v. State,* 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (distinguishing encounter from investigative detention). Harris testified the officers detained appellant when he attempted to walk toward the mall entrance while they awaited the ambulance. There also is no dispute the detention led eventually to the

search that produced the evidence appellant sought to suppress. Our focus is on appellant's argument his initial detention was illegal because officers lacked reasonable suspicion to detain him.

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain*, 315 S.W.3d at 52; *Miller v. State*, No. 05-11-00282-CR, 2012 Tex. App. LEXIS 5655, at *9-10 (Tex. App.—Dallas, July 16, 2012, no pet.) (mem. op., not designated for publication). An officer is justified in briefly detaining a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Miller,* 2012 Tex. App. LEXIS 5655, at *9 (citations omitted). Whether reasonable suspicion exists depends on the content of the information known to the officer as well as its degree of reliability. *Id.* at *10 (citation omitted). The State is not required, however, to establish a crime actually occurred prior to the investigatory detention. *Id.* (citation omitted).

"Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* at *11-12 (citing TEX. PENAL CODE ANN. § 49.01(2)(A)). The offense of public intoxication occurs when "the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." *Id.* (citing TEX. PENAL CODE ANN. § 49.02(a)). A public place includes the common areas of office buildings and shops.

6

TEX. PENAL CODE ANN. § 1.07(40) ("public place" means any place to which the public or a substantial group of the public has access and includes streets and common areas of shops). Under the Penal Code definition, a mall parking lot open to the public is a public place. *Kapuscinski v. State*, 878 S.W.2d 248, 250 (Tex. App.—San Antonio 1994, pet. ref'd). An intoxicated person can pose a danger regardless whether he has access to a vehicle. *Miller,* 2012 Tex. App. LEXIS 5655, at *11 (citation omitted). The intoxicated individual need not commit any dangerous acts in the presence of an officer in order to pose a sufficient danger to himself or others. *Id.* (citation omitted). It is enough if the officer observes a degree of intoxication indicating the individual poses a potential danger to himself or others. *Id.* (citation omitted).

Here, in its role as sole judge of the credibility of testifying witnesses, the trial court could have believed the officers' version of events over that reflected by appellant's testimony. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (in its role as factfinder, the trial court is free to believe some, all, or none of a witness's testimony). Detective Harris told the court shoppers reported appellant's conduct was causing a disturbance in the mall's parking lot, and Harris found appellant lying in the roadway. Appellant was yelling, and appeared to Harris to be "in some kind of crisis." Appellant's conduct of lying in the roadway, yelling incomprehensively and continuing the behavior after being approached by officers, especially when accompanied by his heavy breathing, profuse sweating and bloody condition, gave rise to a reasonable inference that he lacked the normal use of his mental or physical faculties.

To Harris, appellant "appeared to be under the influence of some kind of substance, narcotic." The officers observed appellant get up while he continued to yell

and begin walking toward the mall. The court could have considered the officers' testimony to be corroborated by appellant's admission he "struck the ground" with his hand before the officers arrived because he was "going through emotions." The testimony contained specific facts that, combined with rational inferences from those facts, permitted the court to agree with the officers they had a reasonable suspicion appellant was appearing in a public place while intoxicated to the degree he posed a danger to himself or others.

We do not rely for our conclusion only on Harris's subjective impression that appellant "appeared to be" under the influence of a substance. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (intoxication may be a subjective determination by officer; officer's subjective opinion is not a substitute for specific, articulable facts). The officers reasonably could have suspected that appellant's conduct and condition were the result of intoxication. *Miller,* 2012 Tex. App. LEXIS 5655, at *16; *see Leming v. State,* 493 S.W.3d 552, 564-65 (Tex. Crim. App. 2016). That the officers also reasonably could have inferred that appellant's actions resulted from other causes such as mental illness does not diminish the objective reasonableness of a suspicion of intoxication. *See Leming,* 493 S.W.3d at 565 (reasonable suspicion need not rule out the possibility of innocent conduct) (citations omitted).

Viewing the record under the applicable standard of review, we see no abuse of discretion in the trial court's denial of appellant's motion to suppress. We resolve appellant's sole issue against him.

Conclusion

Having overruled appellant's single issue, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.