COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|                          | §  |                          |
|--------------------------|----|--------------------------|
| JESUS JOSE DURAN,        | §  | No. 08-17-00108-CR       |
| Appellant,               | §  | Appeal from the          |
| v.                       | §  | County Court at Law No. 1 |
| THE STATE OF TEXAS,      | §  | of El Paso County, Texas |
| Appellee.                | §  | (TC# 20140C11470)        |
|                          | §  |                          |

## **O P I N I O N**

In this appeal from a conviction of driving while intoxicated, Jesus Jose Duran contends that the trial court abused its discretion by failing to suppress the results of a blood draw taken after a motorcycle accident. The State argued—and the trial court agreed—that Duran gave voluntary consent to have his blood drawn, meaning the results of the draw were admissible at trial.

We find no abuse of discretion on this record. The judgment of the trial court is affirmed.

### *Factual History*

This case arises from the aftermath of a one-person motorcycle accident involving Duran. El Paso Police Department Officer Raul Gallegos was dispatched to the accident scene at approximately 10:30 p.m., where he saw Duran sitting on a curb next to a motorcycle that was on

the ground. According to Gallegos, an eyewitness told him that Duran smelled like alcohol and that he (the eyewitness) had to stop Duran from attempting to lift the motorcycle off the ground and ride off.

Gallegos testified that Duran told him that he had blacked out while riding home after having drank three or four beers at a bar. Gallegos saw a black tire mark on the curb, a cell phone and wallet that apparently belonged to Duran, and a pool of blood. Duran was the only person at the scene, which led Gallegos to surmise that Duran had hit the curb and flown off the motorcycle.

Duran was transported by ambulance to the hospital, where his blood was drawn. Testing revealed that Duran's blood alcohol content was .215. The legal limit in Texas is .08. The central issue in this case is whether that blood draw was done with Duran's consent.

### *Procedural History*

Prior to trial, Duran moved to suppress his arrest and all evidence and statements. At a pretrial hearing, Officer Gallegos testified that at the hospital, he Mirandized Duran. According to Gallegos, Duran then consented to the blood draw. Gallegos testified that he did not coerce or pressure Duran in any way. When asked why the DIC-24 form was not signed by Duran, Gallegos testified that the form is only signed by defendants who refused to provide a breath or blood specimen. Gallegos did not obtain a warrant for the blood draw, believing Duran's consent to be sufficient.

Duran testified that he never saw the DIC-24 form. He also maintained that he had blacked out from his head injury and did not recall the accident, speaking with Officer Gallegos, or giving consent for the blood draw.

The trial court issued findings of fact and conclusions of law. Among them, the trial court found that Duran was Mirandized and gave consent for the blood draw. With respect to the head

2

injury, the trial court found:

> The defendant's testimony was that he got knocked out (i.e. had a head-injury) and did not recollect consenting to a blood specimen. Nonetheless, on cross-examination by the State, defendant admitted misjudging the curb while on the bike; thus, crashing. He provided officer with clear specific answers at the scene, and never stated he could not recall due to some head injury or being knocked out. The faulty memory only arose at the hospital with respect to the issue of the blood draw.

Duran was ultimately convicted of driving while intoxicated. This appeal followed.

## DISCUSSION

In Issue One, Duran maintains that the blood draw at the hospital violated his Fourth Amendment rights because Officer Gallegos did not have a warrant to seize his blood, thereby violating *Missouri v. McNeeley*.[1] The State counters that Duran consented to the blood draw and that the trial court's finding that Duran consented to the blood draw is supported by the record, meaning that Duran's constitutional rights were not violated and that the trial court was within its discretion to deny the motion to suppress. We agree with the State.

### *Standard of Review and Applicable Law*

We review a trial court's decision on a motion to suppress under a bifurcated standard, affording almost total deference to both (1) the trial court's assessments of witness credibility and demeanor and (2) the trial court's findings of historical fact, so long as those findings are supported by the record. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). We review the application of the law to the facts *de novo*. *Id*. We view the evidence in the light most favorable to the trial court's ruling. *Wade v. State*, 422 S.W.3d 661, 666 (Tex.Crim.App. 2013).

The Fourth Amendment protects people against unreasonable searches and seizures. U.S. CONST. amend. IV. The taking of a blood specimen constitutes a seizure for purposes of the Fourth

---

[1] 133 S.Ct. 1552 (2013)

Amendment. *Schmerber v. California,* 384 U.S. 757, 767 (1966). To be constitutionally reasonable, a search or seizure such as a blood draw must be supported by a warrant, unless an exception to the warrant requirement applies. *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex.Crim.App. 2014). Voluntary consent is an exception to the warrant requirement. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex.Crim.App. 2012). Consent vitiates an officer's need to get a warrant before conducting a search or seizure. *Id.* The State bears the burden of proving the voluntariness of consent by clear and convincing evidence. *Id.* Consent is voluntary when it is freely given and not the result of physical or psychological pressure from the police; the defendant's will must not have "been overborne and his capacity for self-determination critical impair[.]" *Id.* We review the totality of the circumstances to determine whether consent was voluntarily given. *Id.*

### *Analysis*

In his sole issue on appeal, Duran asserts that the State violated *McNeeley* by seizing his blood without a warrant. But Duran's position presupposes the lack of consent to the seizure. The trial court specifically found that Duran *did* consent to having his blood drawn. As such, the threshold question in this case is whether Duran consented to the seizure of his blood. If so, no warrant was required, *McNeeley* does not apply, and the evidence was admissible. Only if Duran did not consent—or if his consent was not voluntary—would *McNeeley* apply.

Determining whether a person consented to a search or seizure is a mixed question of fact and law, one that may turn largely on witness credibility and demeanor. *See, e.g., Aguayo v. State*, No. 08-13-00283-CR, 2015 WL 6741873, at *4 (Tex.App.--El Paso Nov. 4, 2015, no pet.)(not designated for publication)(the question of whether a defendant in a hospital consented to a blood draw by law enforcement when the only evidence presented was the testimony of the defendant

4

and the testimony of the officer hinged on witness credibility); *Hernandez v. State*, No. 08-05-00384-CR, 2007 WL 867651, at *2 (Tex.App.—El Paso Mar. 22, 2007, no pet.)(not designated for publication)(trial court was free to resolve question of whether defendant had mental faculties to consent to a blood test against defendant where officer testified defendant was awake and appeared to be coherent at time warnings were given). Here, as in *Aguayo* and *Hernandez*, the issues of whether Duran (1) consented and (2) had the mental capacity to consent to the blood draw ultimately boil down to a conflict in testimony between Duran and Officer Gallegos. At the suppression hearing, Duran insisted that he did not consent to the blood draw. Officer Gallegos testified that Duran did consent. Because the trial court heard live testimony and we operate from a cold record, we must afford almost total deference to the trial court on which witness was more credible.

Notwithstanding the high hurdle of challenging a credibility determination on appeal, Duran argues that Officer Gallegos' assertion that consent was given is not credible as a matter of law because (1) Officer Gallegos knew that Duran was in a hospital receiving medical attention for head trauma, (2) Officer Gallegos could not conduct field sobriety tests on Duran because Duran was not physically able to do them in his condition, and (3) Officer Gallegos did not write down that Duran had consented to a blood draw, nor did he have a video or audio recording of Duran giving consent. Even given these factors, the trial court was still in a better position than this Court to determine whether Officer Gallegos' testimony was credible. Additionally, the trial court noted that there were inconsistencies in Duran's account of events that cast doubt on his credibility as a witness.

Again, mental capacity to consent to a search is an issue for the finder of fact. *Hernandez*, 2007 WL 867651, at *2. Given the conflict in evidence, given the lack of any third-party evidence

5

tending to corroborate testimony one way or another, and given that the issue of Duran's consent largely hinges on a trial-level credibility determination as between Duran's word and Officer Gallegos' word, the trial court's credibility determination controls the outcome here, and this Court is not in a position to reverse the trial court's decision. The trial court's determination that Duran consented to the blood draw was supported by the record, meaning that the trial court was within its discretion to deny the motion to suppress.

Issue One is overruled.

**CONCLUSION**

We find no reversible error presented before us. The judgment of the trial court is affirmed.

June 10, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)