

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00138-CR

———————————————————

DEVONTE WALKER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1671058

---

Before Kerr, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Devonte Walker appeals his jury conviction for misdemeanor driving while intoxicated (DWI), which stemmed from a January 2021 traffic stop. Walker complains in a single issue that the trial court abused its discretion when it denied his motion to suppress the results of a breath-specimen test that he argues was obtained without his voluntary consent. We will affirm.

## I. BACKGROUND

Police officer Joseph Dorman conducted a traffic stop on Walker for failing to maintain a single lane and observed that Walker had "slow, mumbled" speech, dilated eyes, and that there was a slight odor of alcohol emanating from Walker's vehicle. After giving Walker standardized field sobriety tests, Officer Dorman arrested Walker and placed him in the back of the patrol car. Officer Dorman then read the required DWI statutory warnings to Walker and provided him with a copy of the warnings. After Officer Dorman read the warnings, the two had a conversation that lasted approximately 2 1/2 minutes:[1]

[Dorman]: I am now requesting a specimen of your breath.

---

[1]The audio of this interaction was recorded on a dash-cam from inside Officer Dorman's vehicle and constituted the only evidence considered by the trial court when it initially denied Walker's motion at a pre-trial suppression hearing. However, after Officer Dorman testified at trial, Walker reurged his motion to suppress, which the trial court again denied. Accordingly, our ruling will account for all evidence adduced at the pre-trial hearing and at trial prior to the trial court's second denial. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Siddiq v. State*, 502 S.W.3d 387, 392 (Tex. App.—Fort Worth 2016, no pet.).

[Walker]:  And the options are breath or blood?

[Dorman]:  I'm asking for a specimen of your breath.  It's kind of a little easier on both of us.  But it's up to you.

[Walker]:  Ok.  What is the blood option?  What does that inquire?  I'm sorry.  I'm just asking.  Like I said, I'm working on my doctorate, so I just like facts.

[Dorman]: Right.  I gotcha.  So, I'm asking for a specimen of your breath.  I'm not asking for a specimen of your blood.  With the breath specimen you give a specimen in just a few minutes if you consent to it and then that tells us immediately what it is.  I'm not really asking for a blood specimen right now.  So, if you do the breath specimen, cool, if you decide you don't want to do the breath specimen, then I have to apply for a warrant.  And basically, what this paper says right here is that if you deny giving a breath specimen that your license will be suspended.

[Walker]:  If I deny, my license will be suspended?

[Dorman]:  Right.  That is what this says right here.  But that is up to you.  I can't tell you one way or another whether to do it or not.  That is totally up to you.

[Walker]:  Right.  I understand.

[Walker then begins reading aloud a portion of the statutory warnings.]

[Walker]:  Sorry.  I'm just reading.

[Walker continues reading the warnings aloud.]

[Walker]:  Sorry.  I'm trying to stay warm.

[Dorman]:  I gotcha.  So, would you submit to the breath specimen or no?

[Walker]:  I'd rather do just the blood.

[Dorman]:  Right.  I'm asking for a breath specimen.

[Walker]:  Yeah.  No.  I refuse the breathalyzer and I'll just do the blood.

[Walker continues reading the warnings aloud.]

[Dorman]:  So, no on the breath specimen?

[Walker continues reading the warnings aloud.]

[Walker]:  So, it's the same thing for the breath and the blood?

[Dorman]:  Right, so it's my choice whether I ask you for breath or blood.  I'm asking you for a breath specimen.

[Walker]:  I'll take a breath specimen, sir.

[Dorman]:  You will or will not?

[Walker]:  I will.

[Dorman]:  Ok.

At trial, Officer Dorman recalled that, though Walker initially requested to provide only a blood specimen, Walker continued to refer back to the statutory warnings after Dorman made it clear that only a breath specimen was being sought. Officer Dorman continued:

> I believe [Walker] - - he was unsure of his decision whether or not he wanted to give the breath specimen.  The final decision, at the end of the video, I asked him twice for clarity if he was going to give a breath specimen, and he consented to a breath specimen.

Ultimately, Walker provided two breath specimens for testing; the results were admitted at trial and showed that his blood-alcohol content was 0.143 and 0.141.  The jury returned a guilty verdict and assessed Walker's punishment at 30 days in jail, which was probated for 12 months.

## II. STANDARD OF REVIEW AND RELEVANT LAW

### A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). When, as here, there are no written factual findings to explain the trial court's decision, we imply any such findings that find support in the record. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). We will uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

### B. BURDEN OF PROOF AND LAW ON CONSENT

The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *Id.* at 333. A driver's consent to a breath or blood test must be free and voluntary—i.e., free from physical or psychological pressure from law enforcement. *Id.* Critical to a consent analysis is that the factfinder must consider the totality of the circumstances to determine

whether consent was given voluntarily. *Meekins*, 340 S.W.3d at 459–60, 460 n.26 (stating that trial courts may consider "numerous factors" to determine the totality of the circumstances, including: physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant). "Accordingly, it follows that, because the [factfinder] must consider all of the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary— it must be considered in the totality." *Fienen*, 390 S.W.3d at 333.

## III. DISCUSSION

Walker argues on appeal that, because he initially refused to provide a breath specimen, any subsequent requests by Officer Dorman to obtain a specimen were rendered per se coercive and made Walker's eventual consent involuntary. Likening the situation to a custodial interrogation at which the accused invokes the presence of an attorney, Walker ventures so far as to declare—without authority—that "[i]f a refusal is made, a specimen shall not be taken according to the Court of Criminal Appeals."

Rather than applying the bright-line rule presented by Walker, the trial court was instead tasked with determining whether the totality of the interaction between Walker and Officer Dorman presented clear and convincing evidence that Walker freely and voluntarily consented to giving the breath specimens. *See id.*

6

In this case, Walker does not argue, and the record does not show, that he was physically mistreated by Officer Dorman; there was no threat, no violence, no deception, and no promise made to induce Walker into consenting to the testing. Likewise, no issue has been raised regarding Walker's mental or physical condition that would bear upon the question of voluntary consent.

Instead, the evidence showed that Officer Dorman was respectful and cordial throughout his interaction with Walker. Further, Walker, who was working toward a doctoral degree at the time, "like[d] facts" and was concerned with making an intelligent decision regarding whether to consent to giving a breath sample and whether refusing would result in the suspension of his driver's license.

After giving consent to an unrequested blood draw, Walker did then refuse to provide a breath specimen. However, he continued to audibly read the statutory warnings which prompted Officer Dorman to clarify Walker's decision by asking, "So, no on the breath specimen?" Walker, rather than reasserting his refusal, showed his uncertainty as to the implications of his refusal by asking, "So, it's the same thing for the breath and the blood?" After Officer Dorman answered Walker's question in the affirmative, Walker immediately consented to providing the breath sample. And Officer Dorman confirmed at trial that his clarifying questions were reasonable rather than coercive by explaining that he believed Walker was unsure of his initial decision to refuse.

7

## IV. CONCLUSION

Thus, in light of the totality of the interaction between Walker and Officer Dorman, it was not clearly erroneous for the trial court to find that Walker voluntarily consented to giving the breath specimen and to deny Walker's motion to suppress. We affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 4, 2022

8