

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00114-CR

———————————————————

SANTIAGO TULUL SAC, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 2
Denton County, Texas
Trial Court No. CR-2023-04229-B

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Officer Caitlin Bailey conducted a traffic stop of the vehicle driven by Appellant Santiago Tulul Sac due to unconfirmed insurance for more than 45 days. *See* Tex. Transp. Code Ann. §§ 601.051, .053, .191. After stopping Appellant's vehicle, Officer Bailey suspected that Appellant was operating the vehicle while under the influence of alcohol, so she conducted an investigation after which she arrested Appellant for driving while intoxicated (DWI). Officer Bailey read Appellant his statutory warnings (the DIC-24[1]), received Appellant's consent for a blood test, and took Appellant to the hospital for a blood draw.

Prior to trial, Appellant filed a motion to suppress the evidence obtained during and after the stop, alleging that there was no "probable cause to conduct field sobriety test[s]"[2] and that he did not voluntarily consent to the blood draw. Following a suppression hearing, the trial court issued findings of fact and conclusions of law[3] and

---

[1]The DIC-24 is the Texas Department of Public Safety's standard form that contains written warnings that must be read to an individual arrested for DWI before a police officer can request a voluntary blood or breath specimen from that individual. *See* Tex. Transp. Code Ann. § 724.015; *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

[2]The argument during the motion to suppress hearing expanded this argument to contest reasonable suspicion for the initial stop.

[3]We will detail the findings of fact and the conclusions of law more fully in the discussion section, along with additional pertinent background details. *See* Tex. R. App. P. 47.1.

denied Appellant's motion to suppress. Later, a jury convicted Appellant of driving while intoxicated with a blood alcohol concentration level of 0.15 or more. *See* Tex. Penal Code Ann. § 49.04(d).

In three points, Appellant challenges the trial court's denial of his motion to suppress, arguing that (1) Officer Bailey did not have reasonable suspicion[4] to stop Appellant's vehicle, (2) Appellant withdrew his consent for the blood draw, and (3) Appellant needed an interpreter during the traffic stop. We will affirm.[5]

## Standard of Review

When a defendant moves to suppress the fruit of a traffic stop based on an alleged lack of reasonable suspicion, we apply a bifurcated standard of review to the trial court's ruling. *State v. Hardin*, 664 S.W.3d 867, 871–72 (Tex. Crim. App. 2022). We consider legal questions de novo but give "almost total deference" to the trial court's evaluation of historical facts and witness credibility. *Id.*; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) ("[T]he trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony"); *see State v.*

---

[4]Appellant's brief challenges that there was no *probable cause* for the stop rather than no reasonable suspicion. The proper legal standard for an investigative traffic stop is reasonable suspicion, *see Dunn v. State*, 478 S.W.3d 736, 741 (Tex. App.—Fort Worth 2015, pet. ref'd), but as we construe briefs liberally, we evaluate Appellant's first issue under the proper legal standard of reasonable suspicion. *See* Tex. R. App. P. 38.9.

[5]We will address Appellant's issues out of order—beginning with the first issue, then the third issue, and finishing with the second issue.

*Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.) (clarifying that deferential standard applies even if there is video evidence "unless the video recording indisputably contradicts the trial court's findings"). When the trial court makes explicit fact findings, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless the explicit findings of fact that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

**Reasonable Suspicion to Stop**

In his first issue, Appellant argues that Officer Bailey did not have reasonable suspicion to conduct a traffic stop on his vehicle.

A warrantless traffic stop is analogous to a temporary detention, and like all Fourth Amendment seizures, it must be justified by reasonable suspicion. *Hardin*, 664 S.W.3d at 872; *see* U.S. Const. amend. IV. "Reasonable suspicion exists if the officer has specific articulable facts that, combined with rational inferences from those facts," lead the officer to reasonably conclude that the defendant has committed a traffic offense. *Hardin*, 664 S.W.3d at 872. "When making a determination of reasonable suspicion, we consider the totality of the circumstances." *Id.* (citing *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007)). "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *State v. Binkley*, 541 S.W.3d 923, 929 (Tex. App.—

4

Fort Worth 2018, no pet.) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). "[R]easonable suspicion is dependent on both the content of the information known to police and its level of reliability." *Id.* at 930 (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)).

"An actual violation does not need to have occurred; rather, it is only necessary that the officer had a reasonable suspicion that a violation occurred." *White v. State*, No. 01-23-00041-CR, 2025 WL 309726, at *14 (Tex. App.—Houston [1st Dist.] Jan. 28, 2025, no pet.) (mem. op., not designated for publication) (reviewing challenge to denial of suppression motion); *see Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) ("The question in this case is not whether appellant was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was."); *Kendrick v. State*, No. 01-22-00419-CR, 2024 WL 924513, at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, pet. ref'd) (mem. op., not designated for publication) ("To justify the stop, it is sufficient [to] show that the officer reasonably believed that a traffic violation was in progress.").

Drivers in Texas must maintain proof of financial responsibility for the vehicles they drive. *See* Tex. Transp. Code Ann. § 601.051; *Ellis v. State*, 535 S.W.3d 209, 213–14 (Tex. App.—Fort Worth 2017, pet. ref'd). Failing to do so is a Class C misdemeanor. *See* Tex. Transp. Code Ann. § 601.191; *Ellis*, 535 S.W.3d at 213–14. The validity of a traffic stop when an officer's database-derived suspicion contains a phrase like

"unconfirmed[6]" when describing the state of the driver's insurance depends upon the reliability of the database and its information. *See Binkley*, 541 S.W.3d at 930 (explaining that cases addressing the validity of stops based on ambiguous terms like "unconfirmed" fall into two groups: those where the evidence dispels the ambiguity and shows the data is reliable and those where the evidence falls short of doing so).

Officer Bailey testified that she stopped Appellant for failing to have insurance for more than 45 days,[7] and the trial court found that "as a matter of law, Officer Bailey had reasonable suspicion to conduct a traffic stop on [Appellant's] vehicle due to unconfirmed insurance." The trial court based this conclusion on its findings that Officer Bailey's testimony was credible, that her experience and knowledge of the in-car database used to check Appellant's license plate and vehicle registration was sufficient to establish the system's reliability, and that she ran the license plate while Appellant was at the red light.

---

[6]When a database search returns a result of unconfirmed, or uninsured, it indicates that a current insurance policy had not been reported in more than 45 days. *See e.g.*, *Binkley*, 541 S.W.3d at 927–28; *Ellis*, 535 S.W.3d at 214; *State v. Daniel*, 446 S.W.3d 809, 815 (Tex. App.—San Antonio 2014, no pet.); *see also* Tex. Transp. Code Ann. § 601.053(a)(3) (evidence of financial responsibility may be exhibited when "an insurance binder confirms the operator is in compliance").

[7]In the recording from Officer Bailey's body worn camera, when she approached Appellant after pulling him over, she told him she pulled him over for failure to have insurance. Appellant then confirmed that his insurance had expired.

The testimony at the hearing supports the trial court's findings. Officer Bailey testified that she had run Appellant's license plate at a stoplight,[8] and that her in-car database indicated that Appellant's vehicle was uninsured for more than 45 days. Officer Bailey stated that she had used the database "[t]housands" of times and that, in her experience, the information had always been accurate. *See Ellis*, 535 S.W.3d at 215–16. Appellant does not challenge the reliability of Officer Bailey's in-car database.

Viewing the evidence in the light most favorable to the trial court's ruling, there was adequate information to conclude that Officer Bailey had a reasonable suspicion that Appellant was committing a Class C misdemeanor sufficient to support a warrantless stop of Appellant's vehicle. *See id.* We overrule Appellant's first issue.[9]

---

[8]According to Officer Bailey, Appellant's driving behavior initially caught her attention. She noted that he was revving his engine, stopping abruptly, and accelerating to a speed that appeared to be over the posted speed limit. While the trial court made no finding of fact related to this testimony, we note that traveling in excess of the posted speed limit is also a traffic offense. *See Kendrick*, 2024 WL 924513, at *3; Tex. Transp. Code Ann. §§ 545.351, .352; *see also Jaganathan*, 479 S.W.3d at 247.

[9]We note that in his brief Appellant asserts—without further support—that he was arrested without a warrant and that the arrest "did not fall within any of the exceptions." Construing Appellant's brief liberally, this statement appears to be an attempt to support his argument that the traffic stop was conducted without reasonable suspicion. *See* Tex. R. App. P. 38.9. If the statement was not intended to support Appellant's challenge to the reasonable suspicion of the stop, Appellant neither preserved a challenge to the arrest itself in the trial court—as he did not raise it at all—nor did he properly brief it in this court. *See* Tex. R. App. P. 33.1, 38.1(f), (i).

## Language Barrier

In his third issue, Appellant argues that there was a "communication barrier" between him and Officer Bailey that prevented his understanding of the officer's instructions during her investigation. Because this issue was not raised before the trial court, it is not properly preserved for our review. *See* Tex. R. App. P. 33.1; *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021).

At the pretrial hearing on the motion to suppress, Appellant attempted to raise this issue, but the trial court determined that, because the alleged "language barrier" challenge was not included in the written motion, and the State was entitled to notice on the matter, that should there be a trial, he could raise the argument then. At trial, the extent of Appellant's argument on this matter was a general statement that he wished to "reurge [his] motion to suppress outside the presence of the jury," to which the trial court responded that it was "not going to grant that right now." The matter was never revisited.

Where a motion to suppress makes "broad arguments" but otherwise fails to bring the specific matter to the trial court's attention, and the appellant later seeks to raise this specific matter on appeal, the error is not preserved. *Gomez v. State*, 459 S.W.3d 651, 668 (Tex. App.—Tyler 2015, pet ref'd) (citing *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009)). And appellate courts must not address unpreserved complaints on their merits. *Wurtz v. State*, No. 02-22-00010-CR, 2022 WL 17841128, at *2 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op., not designated for

publication) (citing *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Moody v. State*, 551 S.W.3d 167, 172 (Tex. App.—Fort Worth 2017, no pet.)).

Because neither Appellant's argument to the trial court in the written motion to suppress, nor his argument at trial or during the motion to suppress hearing, reflect the argument he now makes on appeal, we hold that Appellant failed to preserve this claim.[10] We overrule Appellant's third issue.

**Blood Draw Consent**

In his second issue, Appellant argues that he did not provide unequivocal consent to have his blood drawn. To support this argument, Appellant points to his proffered evidence that he did not understand—because of the alleged language barrier—the instructions for the standard field sobriety tests (SFSTs) or the questions that Officer Bailey asked him during the investigation. Thus, Appellant contends, he was unable to provide consent for the blood draw. While this is the argument that Appellant makes in his brief, we also note that it differs greatly from the question he raises in bold under the title, "Point of Error Two." That topic sentence focuses not upon involuntary consent based upon a language barrier, but instead upon Appellant's

---

[10]Additionally, Appellant does not cite any relevant authority to indicate that the failure to conduct standard field sobriety tests or investigations in a suspect's first or preferred language would constitute a violation of his due process rights under either the Texas or United States constitutions. *See, e.g.*, *Phong Xuan Dao v. State*, 337 S.W.3d 927, 930–31 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (same proposition).

9

alleged withdrawal of consent at the hospital and later coercion into giving consent a second time so that he could use the restroom.[11]

The validity of an alleged consent is a question of fact and must be supported by clear and convincing evidence. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). "A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Id.* (first citing *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011); and then citing *Hall v. State*, 649 S.W.2d 627, 628 (Tex. Crim. App. 1983)). We must determine "whether—considering the totality of the circumstances—the driver's will has been overborne and his capacity for self-determination critically impaired such that his consent must have been involuntary." *Bwondara v. State*, No. 02-25-00148-CR, 2025 WL 3723945, at 5 (Tex. App.—Fort Worth Dec. 23, 2025, pet ref'd) (mem. op., not designated for publication) (citing *Fienen*, 390 S.W.3d at 333).

In its findings of fact and conclusions of law regarding Appellant's consent, the trial court found that Appellant "gave consent to have his blood drawn while he was at the scene of the traffic stop" and "while he was at the hospital;" that Appellant "never withdrew his consent to have his blood drawn;" and that Appellant's "use of the

---

[11] Although this argument does not match the issue presented, *see* Tex. R. App. P. 38.1(f), (i), we liberally construe Appellant's argument as an attempt to illustrate how his consent was not freely or voluntarily made—either based on his misunderstanding or due to coercion. *See* Tex. R. App. P. 38.9.

bathroom was not tied to whether or not he consented to a blood draw," nor was he "denied the opportunity to use the bathroom." The trial court also found that Officer Bailey was a credible witness. *See Hardin*, 664 S.W.3d at 871–72; *Ross*, 32 S.W.3d at 855. Based on these findings the trial court concluded that, as a matter of law, Appellant consented freely and voluntarily to the blood draw and that the blood draw complied with the Fourth Amendment.

The evidence in the record supports the trial court's explicit fact findings. *See Kelly*, 204 S.W.3d at 818-19. At the suppression hearing, Officer Bailey testified that after she read Appellant the DIC-24, he asked her if she was trying to test his blood— indicating, in her opinion, that he understood[12] what she was asking of him. Then, when Officer Bailey asked Appellant if he consented, he responded, "Good to test me." Officer Bailey agreed that Appellant had wanted to use the restroom at the hospital, and she told him he could go to the restroom "[a]s soon as [they] got done with the test." According to Officer Bailey, Appellant replied, "Just go ahead then." But she

---

[12]Officer Bailey also testified that Appellant did not ask for a Spanish version of the DIC-24 and that he had been answering all of her questions during the investigation, leading her to believe that there was no misunderstanding because of a language barrier. This appears to be corroborated on the body camera video. We also note that there was no interpreter sworn in for the suppression hearing and that Appellant's written request for court-appointed counsel indicated that he speaks both English and Spanish.

testified that he never withdrew his prior consent and that she did not perceive his request to go to the restroom as a withdrawal of consent to the blood draw.[13]

There is nothing else in the record to suggest that Appellant did not freely and voluntarily consent to the blood draw at the traffic stop, that he withdrew his consent at any time, or that Officer Bailey coerced him to give his consent again at the hospital. *See Fienen*, 390 S.W.3d at 333. Accordingly, considering the totality of the circumstances, we conclude that the State satisfied its burden to prove that Appellant freely and voluntarily consented to the blood draw. *See id.* We overrule Appellant's second issue.

## Conclusion

Having overruled each of Appellant's issues on appeal, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 30, 2026

---

[13]Officer Bailey's body camera video does not contradict the testimony given during the suppression hearing. *See Houghton*, 384 S.W.3d at 446.